# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00374-CV

**Jan Lubin, Gilberto Villanueva, Michael Paladinao, Gerald Hooks and Lesly K. Hooks, Appellants**

**v.**

**Farmers Group, Inc.; Farmers Underwriters Association; Fire Underwriters Association; Farmers Insurance Exchange; Fire Insurance Exchange; Texas Farmers Insurance Company; Mid-Century Insurance Company of Texas; Mid-Century Insurance Company; Truck Insurance Exchange; Truck Underwriters Association; Farmers Texas County Mutual Insurance Company; The State of Texas; Texas Department of Insurance; and Texas Commissioner of Insurance, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT NO. GV202501, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## O P I N I O N

The issue in this interlocutory appeal is whether article 21.21, section 17 of the insurance code allows the Attorney General to maintain a class action without satisfying the class action prerequisites set out in article 21.21, section 18. *See* Tex. Ins. Code Ann. art. 21.21, §§ 17, 18 (West Supp. 2004-05). Section 17 of article 21.21 authorizes the Attorney General, at the request of the Texas Department of Insurance (the "Department"), to institute a class-action suit to recover

from an insurer damages for injuries done to the insurance-buying public. *Id*. § 17(a). Section 18 sets out procedural requirements for class actions, including the appointment of a class representative. *Id*. § 18. In this case, the Attorney General initiated a class action under section 17, but did not comply with section 18's procedural requirements; in particular, no class representative was appointed. The district court found that strict compliance with section 18 was unnecessary because the Attorney General was qualified through his capacity as *parens patriae* to adequately represent the interests of the potential class members without the appointment of a class representative. Appellants, individual policyholders who intervened and objected to the class settlement agreement, contend that the trial court erred in allowing the Attorney General to pursue a class action without satisfying the requirements ordinarily applied to class action lawsuits. We agree and hold that the Attorney General must comply with the procedural requirements of section 18 to maintain a class-action suit under section 17. Accordingly, we reverse the district court's order certifying the class and remand the cause to the district court for further proceedings.

## PROCEDURAL AND FACTUAL BACKGROUND

In late 2001, Farmers[1] stopped offering HO-B ("all-risk") homeowners policies and began offering HO-A ("stated-peril") homeowners policies that limited coverage for water damage and eliminated mold coverage. The Department investigated and discovered that even with the reduced coverage, Farmers' premiums had in fact increased. The Department determined that the rate increase was due to the method Farmers used to calculate homeowner rates. Although Farmers

---

[1] There are eleven appellees, all related or associated insurance providers. We will refer to appellees collectively as "Farmers."

had established discounts based on a policyholder's good credit, geographic location, and age of the home, those discounts were not applied uniformly, resulting in over- and undercharges, unfair rates, and geographic discrimination.

In late 2001, the Office of the Attorney General opened an investigation into Farmers' failure to disclose the use of credit scoring in determining rates or the particulars of its management-fee arrangement with subsidiaries. In June 2002, the Attorney General opened a separate antitrust investigation into whether Farmers was improperly tying auto and homeowners policies[2] and whether it engaged in an unlawful boycott when it discontinued offering all-risk insurance.

The Department referred its investigation to the Attorney General, and on August 5, 2002, the Attorney General sued Farmers, alleging that Farmers failed to adequately disclose its rating practices and the use of credit scoring and that some of its rating practices were unfairly discriminatory.[3] On August 13, 2002, the Commissioner of Insurance began an administrative proceeding against Farmers and issued an emergency cease and desist order, ordering Farmers to change its rating practices within three months.[4] On August 30, 2002, Farmers filed suit in district

---

[2] "Tying" is the practice of conditioning the sale of one policy on the purchase of another, for example, requiring a purchaser to buy an auto policy as a condition of obtaining a homeowners policy.

[3] Originally, the suit was brought not as a class action but "in the name of the State of Texas and on behalf of the Texas Commissioner of Insurance" against Farmers for "deceptive, misleading, and discriminatory homeowners-insurance practices" in violation of the insurance code and the Deceptive Trade Practices Act. *See* Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 2002 & Supp. 2004-05) (the "DTPA").

[4] Section 83.051 of the insurance code authorizes the Commissioner of Insurance to issue an emergency cease and desist order if he believes an insurer is committing an unfair act that is fraudulent, endangers public safety, or will cause imminent public injury incapable of being rectified and likely to have effect. Tex. Ins. Code Ann. § 83.051 (West Supp. 2004-05).

court, appealing the cease and desist order and seeking a declaration that the Commissioner of Insurance lacked regulatory authority over Farmers.

On November 30, 2002, the State, the Attorney General, the Department, and the Commissioner of Insurance entered into a Memorandum of Understanding ("MOU") with Farmers, settling the administrative proceeding and the Attorney General's investigations and suit and setting forth the terms of a "global settlement." Under the settlement, the Attorney General was to amend his pleadings to transform the suit into a settlement class action including all claims that had been or could be made by individual policyholders in Texas. The MOU stated that the amended suit:

> shall include (and the Parties will stipulate to) the definition of a settlement class or class with settlement sub-classes under Rule 42 of the Texas Rules of Civil Procedure and the *parens patriae* doctrine, and based upon the [Attorney General]'s authority under article 21.21 § 17 of the Texas Insurance Code . . . .

Under the MOU, Farmers agreed to reduce homeowners' base rates by 6.8% immediately, refrain from increasing those base rates until August 31, 2003, and adopt nondiscriminatory discounts based on a home's age and location and the insureds' credit history. The MOU also created several settlement funds. Farmers agreed to offer refunds to past policyholders who did not renew their homeowners' policies when Farmers replaced the HO-B policies with HO-A policies. One fund was to be used to compensate policyholders who were wrongly denied any discounts, and another was to reimburse policyholders for any overcharges associated with erroneous credit information. The MOU also called for the payment of $2 million in attorneys' fees and costs to the State, included a provision allowing either party to terminate the

4

settlement agreement if more than 2% of the eligible policyholders opted out of the settlement, and required Farmers to discontinue its practice of tying one kind of policy with another.

On December 18, as required by the MOU, the Attorney General filed his first amended petition "in the name of the State of Texas . . . and on behalf of the Commissioner of Insurance . . . , the Department of Insurance . . . , and certain classes of Texas homeowners and automobile insureds." The amended petition stated, "At the request of the Commissioner and in the public interest, the State, by and through the Office of the Attorney General, brings these claims as a class action pursuant to Tex. Ins. Code art. 21.21, § 17 and Tex. R. Civ. P. 42 on behalf of the Settlement Classes," and defined the following three settlement classes: the "Rate Class," the "Discount Class," and the "Credit Usage Notice Class."[5] The petition also alleged:

> The prerequisites to maintaining a class action under the Texas Insurance Code have been met. The classes are so numerous that joinder of all members is impracticable, there are questions of law or fact common to the classes, the claims that Plaintiffs have brought are typical of the claims of class members, and the State will fairly and adequately protect the interests of the classes. . . . Furthermore, the questions of law or fact common to each class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

---

[5] The Rate Class was to encompass all Farmers' Texas homeowners-insurance policyholders whose policies began or were renewed between December 28, 2001 and December 27, 2002, or who received notice after November 14, 2001 that their HO-B policies would not be renewed. The Discount Class was to consist of all Texas homeowners-insurance policyholders who were eligible to receive certain discounts from November 16, 2000 through December 10, 2002. The Credit Usage Class was to include all Texas homeowners or auto-insurance policyholders who received or should have received a credit usage notice from October 1, 1999 through February 28, 2003.

5

On February 18, 2003, the Attorney General filed a second amended petition making the same substantive allegations. The Attorney General changed the manner in which he purported to represent the class parties from stating that he was bringing the suit "*on behalf of* . . . certain classes of Texas homeowners and automobile insureds" to asserting that he was bringing the suit "*in the interest of* Farmers' Texas homeowners-insurance policyholders and the Automobile Insurers' automobile-insurance policyholders." (Emphasis added.) The description of the Attorney General's role changed as well, to state, "At the request of the Commissioner and in the public interest, the State, by and through the Office of the Attorney General, brings these claims as a class action pursuant to Tex. Ins. Code Ann. art. 21.21, § 17 and as *parens patriae* under Tex. R. Civ. P. 42 to seek restitution for insureds of Defendants." The petition again alleged that the prerequisites to maintaining a class action under the insurance code were met, and added an assertion that the prerequisites to maintaining a class action as *parens patriae* were also satisfied.

The district court conducted a lengthy hearing on the class certification issue and heard testimony from several witnesses. One of the main issues was whether sections 17 and 18 of article 21.21 of the insurance code authorized the Attorney General to bring a class action suit without satisfying traditional class-action prerequisites, in particular, the appointment of a class representative who would adequately represent the interests of the class and whose claims were typical of the class. *See* Tex. Ins. Code Ann. art. 21.21, §§ 17, 18(a)(3), (a)(4). The Attorney General argued that he was not required to designate a class representative because section 18(a) applied by its terms only to "private class actions" and because the Attorney General was, as a matter of law, unauthorized to enter into an attorney-client relationship with an individual class

6

representative. One of Farmers's witnesses, Professor Samuel Issacharoff, agreed and opined that a suit brought by the Attorney General under section 17 was comparable to a *parens patriae* action brought under federal law.[6]

On June 27, 2002, the court signed an "Order of Preliminary Approval," finding that the Attorney General could bring the class action. The court found that the Attorney General could, "fulfill the role of the Settlement Classes' Counsel" by virtue of "the *parens patriae* authority granted in section 17 of article 21.21 of the Insurance Code and Rule 42 of the Texas Rules of Civil Procedure." The court further found that, if the requirements of Rule 42 and section 18 had to be satisfied:

> each of those requirements has been met, specifically: (a) each of the Settlement Classes is so numerous that joinder of all members is impracticable; (b) there are questions of law or fact common to the Settlement Classes which predominate over any individual questions; (c) the claims or defenses brought by the State on behalf of Farmers' policyholders are typical of the claims or defenses of the Settlement Classes and the State is authorized to bring claims on behalf of the Settlement Classes; (d) in negotiating and entering into the Settlement Agreement, the State has fairly and adequately represented and protected the interests of the Settlement Classes; (e) the questions of law or fact common to the Settlement Classes predominate over any questions affecting only individual members; and (f) certifying this Action as a class

---

[6] Under federal law, an attorney general may sue as *parens patriae* on behalf of the state's citizens for monetary relief for injury done to citizens by antitrust violations. 15 U.S.C.A. § 15c(a) (West 1997). This legislation was designed to enhance the effectiveness of antitrust enforcement on behalf of small consumers by authorizing states' attorneys general to bring suits in their capacities as *parens patriae* on behalf of their citizens without compliance with Federal Rule of Civil Procedure 23 prerequisites for maintaining a federal class action. *Illinois v. Abbott & Assocs., Inc.*, 460 U.S. 557, 573 n.29 (1983). Texas Rule of Civil Procedure 42 ("Rule 42") was patterned after Federal Rule of Civil Procedure 23 ("Rule 23"). *Stary v. DeBord*, 967 S.W.2d 352, 353 (Tex. 1998). Rule 42 and section 18 of article 21.21 are nearly identical, and those rules, along with Rule 23, impose the same requirements for establishing the propriety of a class-action suit. *Compare* Fed. R. Civ. P. 23 *with* Tex. R. Civ. P. 42 *and* Tex. Ins. Code Ann. art. 21.21, § 18 (West Supp. 2004-05).

action is superior to other available methods for the fair and efficient adjudication of the controversy.

Appellants brought this interlocutory appeal. *See* Tex. Ins. Code Ann. art. 21.21, § 18(d) (authorizing interlocutory appeals of certification orders). Appellants argue that the district court abused its discretion in certifying the settlement class action because (1) the Attorney General is not exempt from the requirements of section 18 and rule 42; (2) there is no class representative; (3) settlement classes are subject to heightened scrutiny; (4) the Attorney General lacks authority to assert the class's strongest claims; (5) there is a conflict of interest between the Attorney General and the Department; (6) there is intra-class conflict; and (7) the Attorney General failed to evaluate some of the released claims.[7] Because we conclude that the district court committed an error of law in certifying the settlement class without a class representative, we limit our review to that issue alone.

## STANDARD OF REVIEW

We review a trial court's preliminary order to certify a class for an abuse of discretion. *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 433 (Tex. 2000); *see General Motors Corp. v. Bloyed,* 916 S.W.2d 949, 955 (Tex. 1996). A trial court abuses its discretion when ruling on class

---

[7] The Hookses, who are also class members in a breach of contract suit brought against Farmers in August 2002 by Sandra Geter in Jefferson County, further assert in this appeal that the Attorney General was not authorized to release the claims of the Geter class dealing with Farmers' contractual obligation to renew HO-B policies. On October 21, 2004, the Beaumont Court of Appeals reversed the trial court's order certifying the Geter class and remanded the cause to allow the trial court to consider notice and opt-out issues and to "rigorously analyze [class] cohesiveness," relying on a recent supreme court decision regarding class certifications under rule 42(b)(s) of the rules of civil procedure. *Farmers Group, Inc. v. Geter*, Nos. 09-03-404-CV, 09-03-396-CV, 2004 Tex. App. LEXIS 9364, at *13-17 (Beaumont Oct. 21, 2004, no pet.) (memorandum op.) (citing *Compaq Computer Corp. v. LaPray*, 135 S.W.3d 657, 667-70 (Tex. 2004)).

certification if it does not properly apply the law to the undisputed facts. *State Indus., Inc. v. Fain*, 38 S.W.3d 167, 169 (Tex. App.—Waco 2000, pet. denied).

Because the trial court's ruling was based on its construction of sections 17 and 18 of the insurance code, we apply rules of statutory construction in deciding to what extent the Attorney General must comply with section 18(a) of article 21.21 of the insurance code in bringing a class-action suit under section 17. Statutory construction is a question of law we review *de novo*. *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656 (Tex. 1989). In construing a statute, the primary objective is to determine and give effect to the legislature's intent, beginning with the plain and common meaning of the statute's words. *McIntyre v. Ramirez*, 109 S.W.3d 741, 745 (Tex. 2003). We are bound to construe the statute as written, and if possible, ascertain the legislature's intent from the language used in the statute. *Texas Workers' Comp. Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 593 (Tex. 2000). In ascertaining legislative intent, we may consider the evil sought to be remedied, the legislative history, and the consequences of a particular construction. *See Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998). Additionally, we must consider the statute as a whole rather than as isolated provisions and should not give one provision a meaning inconsistent with other provisions, although it might be susceptible to such a construction standing alone. *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978).

**DISCUSSION**

The issue is whether sections 17 and 18 of article 21.21 authorize the Attorney General to bring a *parens patriae* action or, alternatively, whether he may bring a class action without complying with the class action requirements of section 18, subsections (a)(3) and (4).

We begin our analysis with a textual review of sections 17 and 18. Section 17 is entitled "Class Actions." Tex. Ins. Code Ann. art. 21.21, § 17. Section 17(a) authorizes a class action for damages if a member of the insurance-buying public is harmed by an unlawful deceptive trade practice. *Id*. The suit may be brought by "the individual damaged . . . on behalf of himself and others similarly situated" or by the Attorney General at the request of the Board of Insurance.[8] *Id*. In either situation, the plaintiff may seek damages, costs and attorneys' fees, injunctive relief, and any other relief the court deems proper. *Id*. § 17(a), (b). Subsection (c) authorizes a court to award attorney's fees to a defendant insurer where an "individual plaintiff" has sued in bad faith or for the purpose of harassment. *Id*. § 17(c). Subsection (e) prohibits a class-action suit by an individual or the Attorney General if the Attorney General had already initiated an "administrative class action under Section 14 of this Article" against the same insurer for the same acts or practices.[9] *Id*. § 17(e).

Section 18 is entitled "Class Action: Procedure." *Id*. § 18. Paragraph (a) provides that a court may allow one or more class members to act as "representative parties" and to sue or be

---

[8] The Board is empowered to "investigate into the affairs of every person engaged in the business of insurance in this state" to determine whether "such person has been or is engaged in any unfair method of competition or in any unfair or deceptive act or practice." Tex. Ins. Code Ann. art. 21.21, § 5 (West Supp. 2004-05).

[9] Section 14, entitled "Administrative Class Action," authorizes the Department to order an insurer to refund premiums to policyholders injured by the insurer's unlawful acts. Tex. Ins. Code Ann. art. 21.21, § 14(a) (West Supp. 2004-05). If the insurer fails to comply with the Department's refund order, the Department may ask the Attorney General to sue the insurer to enforce the order. *Id*. § 14(b).

sued on behalf of the class if the number of potential class members is so large that it would be impracticable to join each individually, the class members share common questions of law or fact, the representative's claims are typical of individual class members' claims, and the representative would fairly and adequately protect the interests of the individual class members. *Id*. § 18(a) (referred to as "numerosity," "commonality," "typicality," and "adequacy of representation" requirements). Under section 18(b), "an action may be maintained as a class action if the prerequisites of Subsection (a)" are met and one of the following is true: (1) prosecution of separate actions by individual class members would create a risk of inconsistent adjudications or individual adjudications essentially disposing of the non-party class members's interests or substantially impairing their ability to protect their interests; (2) the opposing party has acted or refused to act on grounds generally applicable to the class, thereby making appropriate injunctive or declaratory relief with respect to the class as a whole; or (3) common questions of law or fact predominate over individual issues, making a class action superior to other methods for a fair and efficient adjudication of the controversy. *Id*. § 18(b). The remainder of section 18 can be summarized as follows: subsection (c) directs the courts to consider cases interpreting federal Rule 23 for guidance in construing section 18; subsection (d) requires an expedited certification proceeding and authorizes an interlocutory appeal from a certification order; notice is discussed in subsections (e), (f), and (i); subsection (g) requires court approval of an agreement dismissing, settling, or compromising the class action; subsection (h) allows the creation of subclasses; subsection (j) authorizes the court to manage the proceedings; and subsection (k) provides for the tolling of limitations. *Id*. § 18(c)-(j) (West Supp. 2004-05).

11

*Parens Patriae*

Appellees argue that section 17 of article 21.21 of the insurance code grants *parens patriae* authority for the Attorney General to bring this type of class action, pointing to the evolution of the *parens patriae* doctrine and the legislative history of article 21.21. Derived from the English common law, *parens patriae* means "parent of the country," and enabled the King to act as guardian for "infants, idiots, and lunatics." *See Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 600 (1982); *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 257 (1972); Black's Law Dictionary 1114 (6th ed. 1990). In the United States, the *parens patriae* doctrine expanded to include state-brought suits to "prevent or repair harm to its quasi-sovereign interests." *Hawaii*, 405 U.S. at 257-28. To have standing under *parens patriae*, a governmental entity must establish that the state has a quasi-sovereign interest, apart from the interests of private parties,[10] there is an injury to a substantial segment of its population, and the injured individuals could not obtain complete relief through a private suit. *Alfred L. Snapp*, 458 U.S. at 607-08.

According to appellees, the legislative purpose behind the passage of article 21.21 can be traced to *Hawaii v. Standard Oil Co.* and *California v. Frito-Lay, Inc.*, 474 F.2d 774 (9th Cir. 1973), both of which concerned the use of *parens patriae* power. The issue in *Hawaii* was whether a particular federal statute authorized a state to sue for damages for injury to its economy. 405 U.S. at 252-53. Acting in its proprietary capacity, in its *parens patriae* capacity, and as the representative of a class, Hawaii sued Standard Oil for antitrust violations. *Id*. at 253. The Supreme Court held

[10] "Quasi-sovereign" interests include those touching on the "health and well-being—both physical and economic—of its residents in general." *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 607 (1982).

12

that in determining whether Hawaii could maintain the action, the issue was not whether Hawaii could sue on behalf of its citizens under general *parens patriae* principles but whether the injury was compensable under the statute in question. *Id*. at 259. The Court held that the statute authorized a state to recover for injuries suffered in its capacity as a consumer of goods and services, but not for economic injuries to the sovereign interests of a state. *Id*. at 265. The Court concluded that if the statute were intended to allow a state to recover for damage to its general economy, then "we should insist upon a clear expression of a congressional purpose to make it so, and no such expression is to be found in" the statute. *Id*. at 264.

The issue addressed in *Frito Lay* was whether a state could sue as *parens patriae* for injury to the business or property of the state's citizens. *See* 474 F.2d at 775. California sued Frito-Lay, arguing that the practical inability of an injured citizen to bring an individual antitrust suit warrants a state to act on behalf of the individual. *Id*. The Ninth Circuit noted that *parens patriae* actions had not been recognized as a basis for recovery of money damages for injuries suffered by individuals; instead, *parens patriae* actions were generally used to "halt injury to a quasi-sovereign state interest . . . 'apart from that of particular individuals who may be affected.'" *Id*. (quoting *Georgia v. Pennsylvania R.R.*, 324 U.S. 439, 451 (1945)). The court observed that the state was acting "not as *parens patriae* in the sense in which that term is recognized in this country, but as guardian *ad litem*" for the class it purported to represent and that the state's procedure bypassed the procedural requirements of Rule 23. *Id*. at 776 & n.9. Heeding the Supreme Court's admonition in *Hawaii*, the Ninth Circuit concluded that "if the state is to be empowered to act in the fashion here

13

sought, we feel that authority must come not through judicial improvisation but by legislation and rule making." *Id.* at 777.

Under *Hawaii* and *Frito-Lay*, without a specific statutory grant of authority, the Attorney General may not rely on a general invocation of *parens patriae* authority to bring suit for damages on behalf of individually injured persons. *See Hawaii*, 405 U.S. at 264-65; *Frito-Lay*, 474 F.2d at 777. We disagree with appellees' assertion that the legislature, in drafting article 21.21 of the insurance code, provided a "classic grant of statutory *parens patriae* authority to the Attorney General to protect the interest of Texas insureds."

The general rule in Texas is that the Attorney General can only act within the limits of the Texas Constitution and statutes. *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2001). Consistent with this rule, absent a special provision, the Attorney General must comply with the same rules of procedure as other litigants. *Texas Dep't of Corrections v. Herring*, 513 S.W.2d 6, 7-8 (Tex. 1974). *Parens patriae* has been used sparingly in Texas. *Lakeshore Util. Co. v. Texas Natural Res. Conservation Comm'n*, 92 S.W.3d 556, 565 (Tex. App.—Austin 2002, pet. granted). Clear legislative intent is required before we will recognize *parens patriae* authority to sue for monetary damages. *See Hawaii*, 405 U.S. at 264.

A plain reading of article 21.21 reveals no clear grant of *parens patriae* authority under sections 17 and 18. The legislature explicitly stated that in interpreting section 18, courts should be guided by federal cases construing the federal class action rule, and throughout article 21.21, the statutory language references "class actions," not *parens patriae* suits. As the Supreme Court made clear, *parens patriae* actions are not interchangeable with class actions: "*Parens patriae*

14

actions may, in theory, be related to class actions, but the latter are definitely preferable in the antitrust area. Rule 23 provides specific rules for delineating the appropriate plaintiff-class, establishes who is bound by the action, and effectively prevents duplicative recoveries." *Id*. at 266.

A comparison to a federal statute that expressly grants *parens patriae* authority further supports our reading of article 21.21 as nothing more than a class action statute. The Hart-Scott-Rodino Antitrust Improvements Act of 1976, enacted soon after the *Hawaii* and *Frito-Lay* decisions, authorizes states' attorneys general to sue for monetary relief on behalf of state residents injured by federal antitrust violations. *See* 15 U.S.C.A. § 15c (West 1997) (the "HSRA") ("Any attorney general of a State may bring a civil action in the name of such State, as parens patriae on behalf of natural persons residing in such State."). The HSRA's provisions allowing state attorneys general to bring *parens patriae* suits on behalf of state residents were enacted to remedy the difficulties and complexities associated with certifying and maintaining antitrust class actions under federal Rule 23 and in distributing damages. *Illinois v. Abbott & Assocs., Inc.*, 460 U.S. 557, 573 n.29 (1983); *see New York v. Reebok Int'l Ltd.*, 96 F.3d 44, 46 (2d Cir. 1996). Congress understood that an individual consumer overcharged a small amount lacked a practical, individual remedy and that Rule 23 class-action suits were ineffective because large consumer classes with small individual claims were unmanageable. *See* H.R. Rep. No. 94-499, pt. 1, at 2575-76 (1976).

The HSRA illustrates the kind of "clear and express" statutory mandate required to create *parens patriae* authority. It does not refer to class actions or class action procedures but instead explicitly allows a state attorney general to bring a civil action in the state's name as *parens patriae* on behalf of the state's citizens. 15 U.S.C.A. § 15c. In contrast, nothing in article 21.21's

15

language or legislative history indicates that the legislature intended to create *parens patriae* authority as an alternative to class actions in this context. *See* Tex. Ins. Code Ann. art. 21.21, § 17(a) ("If a member of the insurance buying public has been damaged by an unlawful method, act, or practice . . . the Board may request the Attorney General to bring a class action . . . ."). We therefore hold that article 21.21 of the insurance code does not grant *parens patriae* authority.[11]

### *Modified Class Action*

Appellees concede that the settlement class does not have a class representative; thus, the settlement class does not meet the typicality and adequacy of representation prerequisites. However, they contend the Attorney General is not required to do so, arguing that section 17 allows for two different types of class action suits—(1) one brought by an individual, and (2) one brought by the Attorney General—and that only actions brought by individuals must meet the prerequisites

---

[11] Appellees cite *Bara v. Major Funding Corporation Liquidating Trust*, 876 S.W.2d 469 (Tex. App.—Austin 1994, writ denied), and *Texas Department of Mental Health & Mental Retardation v. Petty*, 778 S.W.2d 156 (Tex. App.—Austin 1989, writ dism'd w.o.j.), asserting that "Texas courts have recognized the validity of statutory parens patriae suits brought by the Attorney General in order to restore unlawfully obtained funds to Texas citizens." However, we note first that our reference to section 17 in *Petty* was dicta and second that the other two cited statutes explicitly allowed the Attorney General to intervene in suit or represent certain individuals. *See* 778 S.W.2d at 163 (citing former section 32.51 of education code, which required compliance with Rule 42 and allowed Attorney General to join as class action plaintiff, *see* Act of May 29, 1971, 62d Leg., R.S., ch. 620, § 1, 1971 Tex. Gen. Laws 2006, 2015 (repealed 1993), and article 4447w, section 6 of revised statutes, which specifically authorized Attorney General to represent "class of individuals composed of veterans," *see* Act of May 27, 1981, 67th Leg., R.S., ch. 874, § 1, 1981 Tex. Gen. Laws 3330, 3331 (repealed 1989)). In *Bara*, we held that a DTPA suit brought by the Attorney General in the State's name and on behalf of "a specified group of individuals" was a "*de facto* class action" that tolled the running of limitations against individuals while they were part of the Attorney General's suit. 876 S.W.2d at 472-73. *Petty* and *Bara* do not support a conclusion that section 17 grants the Attorney General *parens patriae* authority to sue.

16

of section 18(a). According to appellees, the legislature has determined that the Attorney General adequately fulfills the role of class representative, thus obviating the need for a traditional class representative with typical claims. For support, they focus on the first sentence of section 18(a): "The court shall permit *one or more members of a class* to sue or be sued as representative parties on behalf of the class only if" the prerequisites of numerosity, commonality, typicality, and adequacy of representation are satisfied. Tex. Ins. Code Ann. art 21.21, § 18(a) (emphasis added). Appellees conclude that only in class actions initiated by individual class members must the prospective class satisfy section 18(a)'s prerequisites. In other words, appellees assert that when the Attorney General institutes a class action under article 21.21, he is not constrained by the traditional class action requirements and need only comply with section 18(b) because the legislature has already determined that he is an adequate class representative. We disagree.

**Statutory Language**

A review of the language used in article 21.21 shows that a class-action suit brought by the Attorney General should be treated the same as one brought by a member of the insurance-buying public. Article 21.21 provides for two types of class-action suits: (1) an administrative civil enforcement class action under section 14 and (2) a more traditional section 17 class action. *See* Tex. Ins. Code Ann. art. 21.21, §§ 14 (West Supp. 2004-05) ("Administrative Class Action"), 17 ("Class Actions"). The two types of suits address two distinct circumstances: (1) recovery through an administrative class action of unlawfully obtained premiums after a Board finding that an insurer committed some sanctionable act, and (2) recovery of damages after a judicial determination that an insurer has committed a sanctionable act. Clearly, section 17 authorizes a class action by either the

17

Attorney General or an individual. *See id*. § 17(a). Such a suit, however, may only be brought if "a member of the insurance buying public has been damaged." *Id*. In other words, even at the insistence of the Board, the Attorney General cannot initiate a class action to recover damages done only to the State or the Department in their proprietary capacities. A class action for damages may be brought under section 17 only when the public has been injured, although it offers two choices as to who may initiate such an action.

We disagree with appellees that section 18 creates two types of class actions that may be brought on behalf of the injured insurance-buying public. Indeed, section 18(b), which mandates compliance with the subsection (a) class action prerequisites, makes clear that section 17 class actions brought by the Attorney General are subject to the same prerequisites as those initiated by individual class members. Subsection 18(b) does not distinguish suits brought by class members from those brought by the Attorney General in requiring compliance with subsection (a)'s prerequisites. *Compare id.* § 18(a) *with id.* § 18(b). Under appellees' argument, the Attorney General could bring a class action on behalf of any number of class members without regard to typicality or commonality of injury or adequacy of representation. Appellees' argument lacks support in the plain language of section 18(b), which does not qualify its requirement of section 18 compliance based on the initiator of the suit. The language is clear: all section 17 class actions must meet the requirements of section 18(a).

**Legislative History and Federal Rule 23**

Article 21.21 was enacted in 1951 to bar insurers from discriminating in the setting of premiums. *See* Act of June 7, 1951, 52d Leg., R.S., ch. 491, § 2, 1951 Tex. Gen. Laws 868, 1075-

18

76. In 1973, the legislature enacted House Bill 417, which amended article 21.21, adding section 14, "Administrative Class Actions," section 17, "Class Actions," and section 18, "Class Action: Procedure." *See* Act of May 10, 1973, 63d Leg., R.S., ch. 143, § 2, 1973 Tex. Gen. Laws 322, 338-41. The parties disagree over the legislative purpose behind the enactment of House Bill 417.[12] Appellees assert that the legislative history shows that the legislature intended to exempt Attorney General class actions from traditional class-action requirements, citing the committee notes on sections 17 and 18, which state that section 17 "[d]elineates the procedures available for class actions," and that section 18 "[s]ets out the procedure for a private class action and is the same as" the procedure formerly included in the DTPA. House Comm. on Bus. & Indus., Bill Analysis, Tex. H.B. 417, 63d Leg., R.S. (1973). Although appellees argue that by "private class action" the

---

[12] Appellees cite the comments preceding House Bill 417, which enacted the DTPA and expanded article 21.21 to allow class actions, in which then-Attorney General John Hill stated:

> [House Bill 417] strikes directly at the inequities now existing in consumer protection legislation, and will provide remedies under which the Attorney General's Office can properly determine between premeditated practiced deception and honest error. . . . Under our system as it now stands, a suit can be filed by a consumer against a person or organization committing an act, but the consumer must prove common law fraud. The present conditions provide only for the Attorney General's office to bring a restraining order and limits their ability to prosecute. The common law remedy is not adequate for a consumer to recover the loss, thereby making this bill a major step in the direction of providing the consumer, through the Attorney General's office, with the necessary tools for equitable recovery subject to, of course, a ruling in favor of the consumer.

House Comm. on Bus. & Indus., Bill Analysis, Tex. H.B. 417, 63d Leg., R.S. (1973). This explains the rationale for allowing the Attorney General to bring a class-action suit but does not answer whether, in doing so, the Attorney General must comply with section 18(a).

committee meant one instituted by an injured individual, the notes can also be interpreted as distinguishing "a private class action," which must be brought by a person aggrieved by an insurer's conduct or the Attorney General, from a section 14 "administrative class action" brought by the Attorney General at the Department's request.

According to appellants, the bill was enacted in response to the Texas Supreme Court's decision in *Commercial Travelers Life Insurance Co. v. Spears*, which revealed the problem with the former version of Rule 42 under which class action certification depended on whether the class action was "true," "hybrid," or "spurious." *See* 484 S.W.2d 577, 578-79 (Tex. 1972) (orig. proceeding). A year after the *Spears* decision, the legislature enacted article 21.21's class action provisions, using Rule 23's procedures and federal decisions construing Rule 23 as precedent. *See Bernal*, 22 S.W.3d at 433; *Stary v. DeBord*, 967 S.W.2d 352, 353 (Tex. 1998).

The language of section 18 mirrors that found in federal Rule 23, which includes subtitles for each subsection. For example, Rule 23(a) is titled, "Prerequisites to a Class Action," and Rule 23(b) is "Class Actions Maintainable," making it clear that subsections (a) and (b) were intended to work together. Before individuals may sue on behalf of a class, they must first satisfy the subsection (a) prerequisites. After those prerequisites are satisfied, the class action can only be "maintained" if the elements of subsection (b) are present. In other words, subsection (a) determines whether an individual can represent the class, and if so, subsection (b) determines whether the suit may be maintained as a class action. Although section 18 does not include these same titles, it is modeled after Rule 23 and the descriptive phrases of Rule 23 may properly guide our construction of section 18.

**Federal Case Law**

A review of federal case law reveals that some courts have approved of a state's attorney general acting as a class representative. In some of those cases, however, the state itself was part of the injured class and therefore satisfied the "typicality" requirement, a fact not present in the case before us. *See State Teachers Ret. Bd. v. Fluor Corp.*, 73 F.R.D. 569, 572 (S.D.N.Y. 1976) (holding that state attorney general may act on behalf of out-of-state class members when state agency he represents is allied with class members and agency's representativeness is sufficiently shown); *In re Antibiotic Antitrust Actions*, 333 F. Supp. 278, 280 (S.D.N.Y. 1971) (court determined states' claims were typical of consumer claims because states supported welfare programs that reimbursed for prescription drugs and therefore stood "in the shoes of a substantial number of purchasers of the drugs"); *see generally In re Anthracite Coal Antitrust Litigations*, 78 F.R.D. 709 (M.D. Pa. 1978) (state-plaintiff satisfied requirement that it be personally affected and harmed by defendant in same manner as proposed class but did not satisfy other requirements for class certification, such as common questions of law and fact). In other cases in which state attorneys general were allowed to represent a class, the attorneys general represented other governmental entities. *See Illinois v. Brunswick Corp.*, 32 F.R.D. 453, 460 (N.D. Ill. 1963) (attorney general acted as class representative in antitrust suit brought by "the State of Illinois, for itself, its agencies and public institutions, the various school districts of the State . . . and all other Illinois school districts similarly situated by class"); *see generally Minnesota v. United States Steel Corp.*, 44 F.R.D. 559 (D. Minn. 1968) (attorneys general, representing plaintiff-states in antitrust suit, allowed to represent

21

class of governmental entities); *Illinois v. Harper & Row Publishers, Inc.*, 301 F. Supp. 484 (N.D. Ill. 1969) (same).

When a state-plaintiff has not been injured in the same manner as the members of a class, however, courts have frequently refused to allow the attorney general to act as class representative. *See Illinois ex. rel. Bowman v. Home Fed. Sav. & Loan Ass'n*, 521 F.2d 704, 707 (7th Cir. 1975) (state's attorney sought to sue savings and loan associations on behalf of citizens seeking home mortgage loans but did not allege that state sought such a loan; "[a] state, like any plaintiff-representative, may maintain a class action on behalf of its citizens only if it satisfies the requirements of Rule 23," and "[s]ince the State's Attorney is not a member of the class which he purports to represent, the district court properly dismissed the complaint"); *see also In re Rusty Jones, Inc.*, 128 B.R. 1001, 1012-15 (N.D. Ill. 1991) (proposed class representatives (attorney general, banking commissioner, insurance commissioner, and governmental committee) could not satisfy requirements of Rule 23(a) and could not adequately and fairly represent the proposed class).

We conclude that absent express statutory language granting the Attorney General *parens patriae* authority, the Attorney General cannot maintain a class action without satisfying the class-action prerequisites.[13] Article 21.21, which mirrors the federal class-action rule, contains no clear, express grant of authority for the Attorney General to assume *parens patriae* authority.

---

[13] As supporting authority, appellees cite *In re Toys "R" Us Antitrust Litigation*, 191 F.R.D. 347 (E.D.N.Y. 2000), and *In re Sclater*, 40 B.R. 594, 595 (E.D. Mich. 1984). In *Toys "R" Us*, the attorney general sued pursuant to his statutory *parens patriae* authority, which is lacking here. 191 F.R.D. at 349. In *Sclater*, the attorney general was allowed to act as class representative under his *parens patriae* authority and under a state law allowing him to "bring a class action on behalf of persons residing in or injured in this state." 40 B.R. at 597. The *Sclater* court relied on distinguishable federal cases, and we decline to follow its reasoning.

22

Further, the Attorney General has not shown that the State has suffered an injury similar to those suffered by the class members and thus has not shown that he may act as the class representative himself. Therefore, the Attorney General must comply with the class-action prerequisites listed in section 18.

1. *Class Representative and the Attorney General as Class Counsel*

The Attorney General maintains that he may not act as class counsel in the usual meaning of the term. Jeff Boyd, Deputy Attorney General, testified that there was no authority for the Attorney General to have an attorney-client relationship with individuals other than state officials, agencies, or employees. Professor Issacharoff read 17(a) to "grant the Attorney General the capacity to bring a class action when requested by" the Department and opined that allowing the Attorney General to represent an individual would create a "bizarre mechanism" whereby he might have to solicit a class representative. Issacharoff continued:

> I'll concede that the AG could easily find somebody to put up as a named plaintiff if they had to. But the reason that it's not required in the AG class actions, I believe, is that when the AG speaks on behalf of the citizens of the state, the legitimacy of representation is presumed, or conclusively presumed, as opposed to when a private party does that. . . . It is presumed that certain officials can act on behalf of the people that they already represent.

However, the plain language of sections 17 and 18 does not show a legislative intent to allow the Attorney General to avoid meeting the class representative requirement. *See generally* Susan Beth Farmer, *More Lessons from the Laboratories: Cy Pres Distributions in Parens Patriae Antitrust Actions Brought by State Attorneys General*, 68 Fordham L. Rev. 361, 376-81 (1999).

23

Indeed, section 17 arguably confers on the Attorney General the very authority Boyd and Issacharoff testified was lacking—the authority to represent "a member of the insurance buying public [who] has been damaged by an unlawful method, act, or practice." Tex. Ins. Code Ann. art. 21.21, § 17(a); *cf. Texas Dep't of Mental Health & Mental Retardation v. Petty*, 778 S.W.2d 156, 163 (Tex. App.—Austin 1989, writ dism'd w.o.j.) (citing Act of May 27, 1981, 67th Leg., R.S., ch. 874, § 1, 1981 Tex. Gen. Laws 3330, 3331 (repealed 1989)) (statute provided that Attorney General "may represent a class of individuals composed of veterans" injured by Agent Orange).

*2.    Does Adequacy of Representation Excuse Section 18 Compliance?*

Appellees contend that strict compliance with section 18 and Rule 42 is unnecessary because the Attorney General will adequately represent the class members. However, the Supreme Court rejected a similar argument that as long as there was adequate representation, technical compliance with federal Rule 23 and its notice provisions was unnecessary. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 176-77 (1974). The *Eisen* Court held that a finding of adequate representation did not excuse the class representative from giving notice to potential class members under Rule 23. *Id*. The Court observed that under the petitioner's argument, notice would not be required at all, and stated, "This cannot be so, for quite apart from what due process may require, the command of Rule 23 is clearly to the contrary." *Id*. In other words, "individual notice to identifiable class members is not a discretionary consideration to be waived in a particular case. It is, rather, an unambiguous requirement of Rule 23." *Id*. at 176. Similarly, section 18 imposes unambiguous requirements, not discretionary considerations, on class actions brought under the insurance code.

24

Appellees argue that strict compliance is unnecessary if the settlement is determined to be fair, but in *Amchem Products, Inc. v. Windsor* the Supreme Court rejected the same argument:

> The safeguards provided by the Rule 23(a) and (b) class-qualifying criteria, we emphasize, are not impractical impediments—checks shorn of utility—in the settlement class context. First, the standards set for the protection of absent class members serve to inhibit appraisals of the chancellor's foot kind—class certifications dependent upon the court's gestalt judgment or overarching impression of the settlement's fairness.
>
> Second, if a fairness inquiry under Rule 23(e) controlled certification, eclipsing Rule 23(a) and (b), and permitting class designation despite the impossibility of litigation, both class counsel and court would be disarmed. . . . Federal courts, in any case, lack authority to substitute for Rule 23's certification criteria a standard never adopted—that if a settlement is "fair," then certification is proper.

521 U.S. 591, 621-622 (1997); *see also Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 849 (1999) ("a fairness hearing . . . is no substitute for rigorous adherence to those provisions of the Rule 'designed to protect absentees'"). Further, the Texas Supreme Court recently reaffirmed that the law requires strict compliance with Rule 42's class-action requirements. *See Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 670-71 (Tex. 2004). In *Lapray*, the court admonished trial courts to perform a "rigorous analysis" to determine whether all prerequisites to class certification have been met, and stated, "*All* prerequisites means *all* prerequisites." *Id*. at 671 (quoting *Bernal*, 22 S.W.3d at 435) (emphasis added); *see also McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 232 (Tex. 2001) (subjecting settlement class action to "heightened scrutiny"). Although the district court made an alternative finding that the Attorney General did comply with the procedural requirements of Rule 42 and section 18, the record shows a lack of strict compliance with Rule 42 and article 21.21,

section 18(a) and (b) because no class representative was appointed. *See* Tex. R. Civ. P. 42(a)(3), (4); Tex. Ins. Code Ann. art. 21.21, § 18(a)(3), (4).

Finally, to ensure fair and adequate representation there must be (1) an absence of antagonism between the class representative and the class members and (2) an assurance that the class representative will vigorously prosecute the class members' claims and defenses. *Forsyth v. Lake LBJ Inv. Corp.*, 903 S.W.2d 146, 150 (Tex. App.—Austin 1995, writ dism'd w.o.j.); *see General Tel. Co. of the SW v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *Sosna v. Iowa*, 419 U.S. 393, 403 (1975).

Although the district court found that there were no conflicts between the class and the Attorney General, it had no class representative against which conflicts could be measured. The record shows that a discovery dispute arose between the Attorney General and appellants/intervenors, putative members of the class he sought to represent. Appellants, as putative class members, sought documentation related to the settlement negotiations resulting in the MOU, some of which were in the possession of two senators involved in settling the dispute. The Attorney General resisted, and the district court granted the Attorney General a protective order. Further, there was evidence that the Attorney General himself initially saw the seeds of possible conflict. In a letter to Farmers, Executive Deputy Commissioner of Insurance Casari said, "Farmers' proposal clearly attempts to use Farmers' significant market share as leverage to induce a conflict between the Department's responsibilities to protect policyholders from unfair acts and to also promote competition in the marketplace." The Attorney General may be conflicted by the dual roles he purports to play as both the Department's attorney and the class representative. *See Trbovich v.*

*United Mine Workers of Am.*, 404 U.S. 528, 539 (1972) (discussing conflicting interests of Secretary of Labor in protecting rights of union members). A class representative against whom the adequacy of settlement can be measured is indispensable to protect both the class and Farmers. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (notice, opportunities to be heard and to opt out, and adequate representation are fundamental due process components of class litigation); *Hansberry v. Lee*, 311 U.S. 32, 44-45 (1940) (persons with conflicting interests who are inadequately represented in prior action cannot be bound by prior judgment); *see also Amchem Prods.*, 521 U.S. at 625-26 & n.20 (adequacy inquiry uncovers conflicts of interest between representative and class members). We hold that the Attorney General must comply with section 18.

## CONCLUSION

Appellees argue that only some of the rules set out in section 18 and Rule 42 apply to class actions brought by the Attorney General: "Although section 18(a) & (b) are inapplicable to this suit, other portions of section 18 are indeed applicable. Indeed, section 18(g), requiring court approval of the settlement, applies because unlike section 18(a), section 18(g) is not limited by its terms to class actions brought by a class member 'on behalf of' others similarly situated." We disagree. As in federal Rule 23, section 18(a) determines whether a party can represent a class, and section 18(b) determines whether the suit may be maintained as a class action. Section 18(a) does not excuse a class action brought by the Attorney General under section 17 from strict compliance with the other rules set out in section 18 and Rule 42. Nor may the Attorney General bring this suit under *parens patriae* powers without an explicit grant of those powers in this context.

27

Section 17 allows the Attorney General to bring a class action at the Department's request if a member of the insurance-buying public has been damaged by an unlawful act. Tex. Ins. Code Ann. art. 21.21, § 17(a). Section 18 provides that a class action may be instituted if the requirements of numerosity, commonality, typicality and adequacy of representation are met. *Id*. § 18. We are bound by the plain language of the statutes, *see Bernal*, 22 S.W.3d at 435 (citing *Amchem Prods.,* 521 U.S. at 620), and do not believe that the legislature intended sections 17 and 18 to allow the Attorney General to bring a class action suit without complying with the traditional class action requirements. Unlike the legislative history of the HSRA, the legislative history of article 21.21 does not show an intent to exempt the Attorney General from the requirements of Rule 42 or section 18(a). As stated in *Frito-Lay*, such an exemption would ignore the problems associated with class actions: "The joining of the claims of numerous, dispersed claimants in a single judicial action is inherently complicated and requires safeguards if injustice is to be avoided." *See* 474 F.2d at 777 n.11. When the Attorney General brings a class action suit pursuant to article 21.21, section 17 of the insurance code, he must comply with the requirements outlined in section 18(a) and (b). We reverse the trial court's judgment certifying the class and remand the case for proceedings consistent with this opinion.

                    _____

                    David Puryear, Justice

Before Chief Justice Law, Justices Kidd and Puryear;
    Justice Kidd Not Participating

Reversed and Remanded

Filed: January 21, 2005