

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

October 30, 2006

The Honorable Robert R. Puente
Chair, Committee on Natural Resources
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0474

Re: Appropriate construction of Local Government Code chapter 373A authorizing a city to establish homestead preservation districts and reinvestment zones (RQ-0471-GA)

Dear Representative Puente:

You ask about chapter 373A of the Local Government Code (the "Act"), which the Texas Legislature enacted in 2005 to increase home ownership and prevent the involuntary loss of existing homesteads by low- and moderate-income homeowners living in disadvantaged neighborhoods adjacent to central business districts.[1] *See* Act of May 19, 2005, 79th Leg., R.S., ch. 495, § 1, 2005 Tex. Gen. Laws 1359, 1359. Because the Act is a new statutory scheme, "there is concern about possible adverse legal effects on existing operations of land trusts that own land located within the possible boundaries of any new [homestead preservation] district and on the current operations of municipal programs if a district is created." Request Letter, *supra* note 1, at 1. Thus you ask the following four questions regarding the appropriate construction of the Act:

> 1. If a municipality creates a homestead preservation district under [the Act], and a community housing development organization or a housing finance corporation operates in that district, does the tax exemption in Section 373A.108 apply to all the real property owned by a community housing development organization or a housing finance corporation, including land trust property and other real property located both inside or outside the district?

> 2. May an ordinance creating a . . . reinvestment zone under Section 373A.152(a) include a provision that establishes a termination date for the . . . zone, and may a municipality and a county enter into an agreement under Section 373A.155(d) that requires the county to pay into the tax increment fund of the zone for a period exceeding one

---

[1]*See* Letter from Honorable Robert R. Puente, Chair, Committee on Natural Resources, Texas House of Representatives, to Honorable Greg Abbott, Attorney General of Texas (Mar. 22, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

year without its right to reconsider its decision under Section 373A. 152(f)?

3.    If a . . . reinvestment zone is created under Section 373A.152(a), . . . may the tax increment fund expend funds for public works or public improvements similar to those defined as "project costs" under Section 311.002(1)(A), Tax Code, or is the use of the fund under Section 373A.157 . . . restricted only to the purchase of real property, the construction or rehabilitation of housing units in the zone, and zone administrative expenses?

4.    May a family's income-eligibility to receive a benefit from the . . . reinvestment [zone] tax increment fund be determined in accordance with the U.S. Department of Housing and Urban Development's eligibility rules at 24 Code of Federal Regulations Part 5, and is the family's income eligibility determination only required for the year in which the family receives the benefit or are annual recertifications of income required over the 30-year affordability period under Section 373A.157(g)?

*Id.* at 2.

## I.        Chapter 373A

The Act authorizes a qualifying city to designate, by ordinance, as a "homestead preservation district" (the "district") an area in the city that meets the statutory criteria. *See* TEX. LOC. GOV'T CODE ANN. §§ 373A.051(a), .052 (Vernon 2005); *see also id.* § 373A.003 (stating that the Act applies to a city with a population of more than 650,000 in a uniform state service region with fewer than 550,000 occupied housing units). A qualifying city may "create or designate . . . one or more homestead land trusts, including a land trust operated by a community housing development organization ["CHDO"] certified by the municipality, to operate in an area that includes a district." *Id.* § 373A.101.[2] The homestead land trusts may own and retain title to the land and lease or sell housing units on that land to families at or below seventy percent of the area median income. *Id.* §§ 373A.105, .106(a).[3] Section 373A.108 generally exempts from city and county taxes but not school

---

[2]*See also* TEX. LOC. GOV'T CODE ANN. § 373A.002(2) (Vernon 2005) (providing that a CHDO "has the meaning assigned by 42 U.S.C. Section 12704"); 42 U.S.C. § 12704(6) (2000) (stating that a CHDO means a nonprofit organization that has among its purposes the provision of affordable housing, that maintains accountability to the low-income community residents, that has demonstrated ability to provide affordable housing, and that has a history of serving the local community).

[3]When a "community land trust" ("CLT") sells homes, it leases the underlying land to the homeowners under a long-term renewable lease. *See* INSTITUTE FOR COMMUNITY ECONOMICS, THE COMMUNITY LAND TRUST MODEL, *available at* www.iceclt.org/clt/cltmodel.html (last visited Oct. 17, 2006). "CLTs control housing costs by permanently limiting land costs and 'locking in' subsidies so that they benefit one homeowner after another . . . ." *Id.*

district taxes the real property owned by a homestead land trust (or a land trust created under another statute but operating in the district). *See id.* § 373A.108.

Additionally, the Act authorizes a city to create within the district a homestead preservation reinvestment zone (the "homestead zone"). A city may designate by ordinance as a homestead zone an area in the district that is unproductive, underdeveloped, or blighted, as provided by article VIII, section 1-g(b) of the Texas Constitution. *Id.* § 373A.152(a)–(b). Before adopting the ordinance, the city must prepare a preliminary homestead zone financing plan and send it to the county that will contain all or the greatest part of the homestead zone, and hold a public hearing on the creation of the zone. *Id.* § 373A.152(c)–(d). After reviewing this and other information provided by the city, if the county decides to participate in the zone, "the governing body of the county on an annual basis may reconsider its decision to participate." *Id.* § 373A.152(f).

If a city creates a homestead zone, it must establish a tax increment fund, and each participating taxing unit that taxes real property in the homestead zone, must deposit its "tax increment" into the fund. *Id.* §§ 373A.154, .155(a). In general, the "tax increments" are taxes derived by a taxing unit from the difference between the appraised value of all taxable real property located in the homestead zone for that year less all the property's appraised value when the zone was created. *See id.* § 373A.153 (determination of amount of tax increment). In other words, they are taxes attributable to the increased value of the real property in the zone presumably due to its development. *Cf.* Tex. Att'y Gen. Op. No. JC-0300 (2000) at 8 n.8 (describing a similar statute). The tax increment fund is "dedicated . . . to the development and preservation of affordable housing in the zone." TEX. LOC. GOV'T CODE ANN. § 373A.157(a) (Vernon 2005). Chapter 311 of the Tax Code, which provides for and governs tax increment reinvestment zones, does not apply to the homestead zone. *Id.* § 373A.151; *see also* TEX. TAX CODE ANN. §§ 311.001–.020 (Vernon 2002 & Supp. 2006).

## II.     Analysis

### A.     Application of section 373A.108's tax exemption to real property inside and outside the district

You first ask whether section 373A.108's tax exemption applies to all real property owned by a CHDO or a housing finance corporation ("HFC") operating in the district as a land trust, including property that is not land trust property ("non-land-trust property") and property that is outside the district. *See* Request Letter, *supra* note 1, at 2. To provide a context for your question, we note that based on its population, housing, and uniform state service region requirement, the Act applies only to the City of Austin (the "City"). *See* TEX. LOC. GOV'T CODE ANN. § 373A.003 (Vernon 2005); HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. H.B. 525, 79th Leg., R.S. (2005)[4] ("Creation of homestead preservation district in Austin") (subject); FISCAL NOTE, Tex. H.B. 525, 79th Leg., R.S. (2005) ("The applicability criteria would apply only to the City of Austin

---

[4]*Available at* http://www.hro.house.state.tx.us/frame2.htm (House Research Organization website) (last visited Oct. 17, 2006).

. . . . "). As we understand it, if the City creates a district, it will likely designate a CHDO or a CHDO-controlled entity as a homestead land trust to operate in the district.[5] Additionally, as we understand it, the City would also want its existing HFC established under chapter 394 of the Local Government Code to operate as a land trust in the district. *See* City Brief, *supra* note 5, at 2. Significantly, for the purposes of the City, section 373A.108 does not exempt a land trust's real property from school district taxes. *See* TEX. LOC. GOV'T CODE ANN. § 373A.108 (Vernon 2005).

Section 373A.108 exempts from taxation real property owned by homestead land trusts created or designated under the Act and by land trusts created under other statutes but operating in the district. *See id.* § 373A.108. The statute does not expressly limit its application to land trust real property inside the district. Subsection (a) provides that "[a] *trust's* real property is exempt from property taxation by this state or a political subdivision of this state, *other than a school district.*" *Id.* § 373A.108(a) (emphasis added). And subsection (b) provides that, if approved by the city or the county, "the real property of *any land trust operating in the district under other law* is exempt from property taxation *by the municipality or county* if the land trust is exempt from federal income taxation" under Internal Revenue Code sections 501(a) and 501(c)(3). *Id.* § 373A.108(b) (emphasis added).

While section 373A.108 should be read according to its plain language, it must also be read consistent with the Act as a whole. *See Tex. Dep't. of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004) ("If the statutory language is unambiguous, we must interpret it according to its terms, giving meaning to the language consistent with the other provisions in the statute."); *Lubin v. Farmers Group, Inc.*, 157 S.W.3d 113, 120 (Tex. App.—Austin 2005, pet. filed) (citing *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978)) ("[W]e must consider the statute as a whole rather than as isolated provisions and should not give one provision a meaning inconsistent with other provisions, although it might be susceptible to such a construction standing alone."). The Act's scope and operation are limited to land trust real property inside the district. *See* TEX. LOC. GOV'T CODE ANN. §§ 373A.051, .053, .101–.102 (Vernon 2005); *see also* HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. H.B. 525, 79th Leg., R.S. (2005)[6] ("The city would be able to provide tax-exempt bond financing, density bonuses, and other incentives in the district.") (digest). For instance, the Act authorizes the creation of a district to promote and expand home ownership in a particular area of a city. *See* TEX. LOC. GOV'T CODE ANN. § 373A.051 (Vernon 2005). Additionally, it authorizes the creation and operation of *land trusts* to operate in and for the benefit of the district to promote these purposes. *See id.* § 373A.101 (authorizing a city to create a homestead land trust to "operate in an area that includes a district"); *id.* § 373A.102(a) (stating that a land trust is "created to acquire and hold land for the benefit of developing and preserving long-term affordable housing *in the district*") (emphasis added). By definition, real property owned by a land trust must be land trust property. Finally, the Act authorizes compiling a list of properties *in the district* owned by a city or county that may become available as land trust properties. *See id.* § 373A.053 (inventory of properties); *id.*

---

[5]*See* Brief from David Allan Smith, City Attorney, Austin, TX, to Honorable Greg Abbott, Attorney General of Texas, at 1–2 (Apr. 21, 2006) (on file with the Opinion Committee) [hereinafter City Brief].

[6]*See supra* note 4.

§ 373A.107 (providing for transfer of governmental property to land trust). The Act does not mention or address non-land-trust property or property outside the district.

And because section 373A.108 grants tax exemptions, it must be read narrowly: "It is a long-standing rule of construction in Texas that language granting exemptions from taxation must be construed strictly." *Bexar Appraisal Dist. v. Incarnate Word Coll.*, 824 S.W.2d 295, 297 (Tex. App.—San Antonio 1992, writ denied) (citing *Bullock v. Nat'l Bancshares Corp.*, 584 S.W.2d 268, 271–72 (Tex. 1979), *Hilltop Village, Inc. v. Kerrville Indep. Sch. Dist.*, 426 S.W.2d 943, 948 (Tex. 1968), *River Oaks Garden Club v. City of Houston*, 370 S.W.2d 851, 855 (Tex. 1963)). "Statutory exemptions from taxation are subject to strict construction because they undermine equality and uniformity by placing a greater burden on some taxpaying businesses and individuals rather than placing the burden on all taxpayers equally." *N. Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991). Reading the statute's tax exemption to apply to land trust real property inside the district—rather than all real property irrespective of its use or location—and thus limiting its application comports with this well-established rule.

The City suggests that section 373A.108(a) does not apply to the real property of a CHDO, designated as a homestead land trust under the Act, and located inside the district. *See* City Brief, *supra* note 5, at 2–3. Rather, the City argues, the provisions of Tax Code sections 11.182 and 11.1825 apply, and consequently the CHDO's real property inside the district is also exempt from school district taxes. *See id.* at 2. Generally, under sections 11.182 and 11.1825 of the Tax Code, a CHDO's real property is eligible for exemption from all property taxes, including school district taxes. *See* TEX. TAX CODE ANN. §§ 11.182, .1825 (Vernon Supp. 2006). But, while Tax Code sections 11.182 and 11.1825 apply to all CHDOs, section 373A.108(a) applies specifically to a homestead preservation district and real property owned by a homestead land trust, including a CHDO, located inside the district. And section 373A.108 is the later-enacted statute.[7] "[A] specific act is properly regarded as an exception to, or qualification of, a general law on the same subject previously enacted. In such a case both statutes are permitted to stand, the general one being applicable to all cases except the particular one embraced in the specific act." *Taub v. Aquila Sw. Pipeline Corp.*, 93 S.W.3d 451, 457 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (quoting *Sam Bassett Lumber Co. v. City of Houston*, 198 S.W.2d 879, 881 (Tex. 1947)); *see also* TEX. GOV'T CODE ANN. § 311.026(b) (Vernon 2005) (directing that if conflict between a special and general provision is irreconcilable, the special provision prevails as an exception to the general provision unless the general provision is the later enactment and is intended to prevail). Effect can be given to both sets of statutes by reading section 373A.108 as an exception to sections 11.182 and 11.1825 with respect to a CHDO's land trust properties inside a district.

Similarly, the City suggests that Local Government Code section 394.905, which exempts an HFC's property from all taxes including school district taxes, applies to an HFC's real property

---

[7]*See* Act of May 19, 2005, 79th Leg., R.S., ch. 495, § 1, 2005 Tex. Gen. Laws 1359, 1361 (enacting section 373A.108); Act of June 1, 2003, 78th Leg., R.S., ch. 1156, §§ 2–3, 2003 Tex. Gen. Laws 3256, 3256 (amending Tax Code section 11.182 and enacting section 11.1825); Act of May 23, 1997, 75th Leg., R.S., ch. 715, § 2, 1997 Tex. Gen. Laws 2358, 2360–61 (enacting Tax Code section 11.182).

inside the district rather than section 373A.108(b). City Brief, *supra* note 5, at 2–3; *see also* TEX. LOC. GOV'T CODE ANN. § 394.905 (Vernon 2005). Again, while section 394.905 applies to all housing finance corporations, section 373A.108 is the later-enacted statute[8] and applies specifically to real property inside a homestead preservation district, including real property owned by an HFC operating as a land trust inside the district. Effect can be given to both statutes by reading section 373A.108 as an exception to section 394.905 with respect to an HFC's real property inside the district. *See* TEX. GOV'T CODE ANN. § 311.026(b) (Vernon 2005); *Taub*, 93 S.W.3d at 457.

A strict reading of section 373A.108 consistent with the Act's scope and operation requires us to conclude that it applies only to land trust real property located inside the district. *See Sunset Valley*, 146 S.W.3d at 642; *Lubin*, 157 S.W.3d at 120; *Bexar Appraisal Dist.*, 824 S.W.2d at 297. The exemptions provided by Tax Code sections 11.182 and 11.1825 and by Local Government Code section 394.905 do not apply to such property inside the district. *See* TEX. GOV'T CODE ANN. § 311.026(b) (Vernon 2005); *Taub*, 93 S.W.3d at 457.

## B.    Providing reinvestment zone termination date and county payment of tax increments beyond one year

In your second question, you initially ask whether under section 373A.152(a) a city may, in the ordinance creating the homestead zone, establish a termination date for the zone. *See* Request Letter, *supra* note 1, at 2.

By its terms, the Act neither authorizes nor requires that a homestead zone have a termination date. *See Sunset Valley*, 146 S.W.3d at 642 (stating that unambiguous statutory language must be interpreted according to its terms and consistent with other statutory provisions). We believe the omission here is significant. First, a perpetual homestead zone seems consistent with the other long-term provisions of the Act and, in particular, the inability of the creating city, unlike other taxing units, to limit or stop making payments into the homestead zone's tax increment fund. *See* TEX. LOC. GOV'T CODE ANN. § 373A.102(1) (Vernon 2005) (stating that a land trust must be created to preserve and develop "long-term affordable housing in the district"); *id.* § 373A.103(5) (stating that land trust's purpose is to "capture the value of public investment for long-term community benefit"); *id.* § 373A.155(d) (providing that "[a] taxing unit other than the municipality is not required to pay into the tax increment fund any of its tax increment" unless it has entered into an agreement and that the agreement may specify the amount and duration of the payments). Next, chapter 311 of the Tax Code is instructive on this issue. Chapter 311 authorizes the creation of tax increment financing reinvestment zones and specifically requires the ordinance designating an area as a reinvestment zone "to provide a date for termination of the zone." TEX. TAX CODE ANN. § 311.004(a)(4) (Vernon Supp. 2006). And chapter 311 specifically addresses the termination process. *See id.* § 311.017 (providing for an applicable termination date and for discharge of outstanding bonds). Unlike

---

[8]*See* Act of May 19, 2005, 79th Leg., R.S., ch. 495, § 1, 2005 Tex. Gen. Laws 1359, 1361 (enacting section 373A.108); Act of May 1, 1987, 70th Leg., R.S., ch. 149, § 1, sec. 394.905, 1987 Tex. Gen. Laws 707, 1236 (enacting Local Government Code section 394.905, formerly Texas Revised Civil Statutes art. 1269l-7, sec. 21 originally enacted by Act of May 22, 1979, 66th Leg., R.S., ch. 835, § 21, 1979 Tex. Gen. Laws 2186, 2198).

chapter 311, neither section 373A.152, which authorizes a city to create a homestead zone by ordinance, nor any other provision in the Act addresses the zone's termination. Moreover, section 373A.151 specifically provides that "[c]hapter 311, Tax Code, does not apply to a homestead preservation reinvestment zone created under this subchapter [D]." TEX. LOC. GOV'T CODE ANN. § 373A.151 (Vernon 2005). On its face, section 373A.151 evidences the legislature's awareness of chapter 311 and its provision as well as the legislature's express rejection of the application of chapter 311 provisions to the Act. If the legislature had intended homestead zones to exist for a predefined period, it would have expressly so provided as it did in chapter 311. We cannot insert into the statute what the legislature has omitted. *See RepublicBank Dallas v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex. 1985) (stating that we must take a statute as we find it); *In re S.H.A.*, 728 S.W.2d 73, 83 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (stating that we must avoid "under the guise of construction," amending a statute by adding words to it). Construing the Act to permit a homestead zone ordinance to include a termination date would be tantamount to amending the statute. *See Bolton v. Sparks*, 362 S.W.2d 946, 950 (Tex. 1962) ("Municipal ordinances must conform to the limitations imposed by the superior statutes, and only where the ordinance is consistent with them . . . will it be enforced."); *In re S.H.A.*, 728 S.W.2d at 83. Because it would conflict with the apparent legislative intent of the Act, we conclude that a city creating a homestead zone is not authorized to establish a termination date for the zone.

In your second question, you also ask whether a city and a county may enter into an agreement that requires the county to make tax increment payments beyond one year without the county having the right to reconsider its decision to make the payments. *See* Request Letter, *supra* note 1, at 2.

A participating county retains discretion to annually reconsider its participation in a homestead zone. *See* TEX. LOC. GOV'T CODE ANN. § 373A.152(f) (Vernon 2005). A taxing unit, other than the city establishing the homestead zone, that levies taxes on property in the zone is not required to participate in the reinvestment zone and deposit its tax increments into the tax increment fund unless it has entered into an agreement with the city to do so. *See id.* § 373A.155(d). In the agreement, the taxing unit can specify the amount and the years for which it will make the tax increment deposits. *See id.* But the Act also provides that a participating *county's* "governing body . . . on an annual basis may reconsider its decision to participate" in the zone. *Id.* § 373A.152(f). The county's governing body cannot by agreement cede or bind its statutory discretion to terminate the county's participation—which essentially means transferring the county's tax increments into the homestead zone tax increment fund rather than retaining them for general county purposes—if it should so desire. *See, e.g., City of Corpus Christi v. Bayfront Assocs., Ltd.*, 814 S.W.2d 98, 107 (Tex. App.—Corpus Christi 1991, writ denied) ("No governmental agency can, by contract or otherwise, suspend or surrender its functions, nor can it legally enter into any contract which will embarrass or control its legislative powers and duties or which will amount to an abdication thereof."). In other words, in any homestead zone participation agreement a county must retain the right to annually reconsider its participation.

We conclude that a city and a participating county are not authorized to execute an agreement that requires the county to deposit its tax increments into a homestead zone tax increment fund for

a period exceeding one year and under which the county does not have the right to annually reconsider its participation in the zone.

## C.  Authorized tax increment fund expenditures

You next ask whether homestead preservation district reinvestment zone tax increments may be spent for public works or public improvements similar to those defined as "project costs" under Tax Code section 311.002(1)(A), or whether their use is limited under section 373A.157 of the Act to the purchase of real property, the construction or rehabilitation of housing units in the zone, and payment of zone administrative expenses. Request Letter, *supra* note 1, at 2.

Section 373A.157 expressly authorizes a city to expend the tax increment funds to buy land, build or rehabilitate housing, and pay zone and housing administration expenses. TEX. LOC. GOV'T CODE ANN. § 373A.157(e)–(f) (Vernon 2005). The Act provides that a city must spend at least eighty percent of the tax increment fund revenues expended annually to buy land and construct or rehabilitate affordable housing in the zone and no more than ten percent for administering the zone. *Id.* § 373A.157(e). A city may provide no more than ten percent of the revenues expended annually to the designated land banks and CHDOs for administering housing-related activities in the zone. *Id.* § 373A.157(f). As the Act plainly and specifically names the purposes for which the tax increment funds may be expended, any purpose not named is excluded. *See id.* § 373A.157(a) ("Revenue from the tax increment fund must be dedicated as provided by this section . . . ."); *Sunset Valley*, 146 S.W.3d at 642 (stating that unambiguous statutory language must be interpreted according to its terms and consistent with other statutory provisions); *State v. Mauritz-Wells Co.*, 175 S.W.2d 238, 241 (Tex. 1943) ("[T]he express mention or enumeration of one person, thing, consequence, or class is equivalent to an exclusion of all others."). Moreover, as we have noted, section 373A.151 expressly provides that chapter 311 of the Tax Code, which authorizes the use of tax increments for a more expansive list of items than the Act, does not apply to the homestead zone. *See supra* p. 7 (discussing section 373A.151); TEX. LOC. GOV'T CODE ANN. § 373A.151 (Vernon 2005); *see also* TEX. TAX CODE ANN. §§ 311.002(1) (Vernon Supp. 2006) (defining "project costs"), 311.014 (authorizing use of tax increment fund for project costs). Accordingly, pursuant to the Act's plain language, we conclude that the homestead zone tax increment funds may be used only to purchase real property, construct or rehabilitate housing units in the zone, and pay zone and housing-related administrative expenses consistent with section 373A.157 of the Act.

## D.  Income eligibility determination and recertification

In your fourth question, you first ask whether a family's income-eligibility to receive a benefit from the tax increment fund for a homestead zone may be determined in accordance with the United States Department of Housing and Urban Development's ("HUD") eligibility rules. Request Letter, *supra* note 1, at 2.

While section 373A.157, which you ask about, is silent on this issue, other provisions of the Act specifically incorporate the HUD standards for calculating family median income. *See* TEX. LOC. GOV'T CODE ANN. §§ 373A.157, .203, .210 (Vernon 2005). Section 373A.157 requires that

all tax increment fund revenues "be expended to benefit families that have a yearly income at or below 70 percent of the area median family income, adjusted for family size" but does not specify the standard or methodology for determining the family income. *Id.* § 373A.157(b).[9] HUD has promulgated detailed definitions and requirements to determine a family's income eligibility for various HUD and HUD-assisted housing programs. *See* 24 C.F.R §§ 5.601–.609 (2006). Several provisions of the Act incorporate the HUD standards. For instance, section 373A.210(b) requires that certain percentages of homestead land bank properties in a district be sold to "households with gross household incomes not greater than 60 percent of the area median family income, adjusted for household size, for the metropolitan statistical area . . . as determined annually by [HUD]." TEX. LOC. GOV'T CODE ANN. § 373A.210(b) (Vernon 2005); *see also id.* §§ 373A.203(6) (defining "low income household" with reference to area median income determined by HUD), 373A.210(c)(1)–(3) (requiring that certain percentages of rental units be occupied by families with a gross household income not exceeding certain percentages of the area median family income as determined by HUD).[10] Calculating family income eligibility under section 373A.157 in accordance with the HUD rules is consistent with other provisions of the Act. *See Lubin*, 157 S.W.3d at 120 (stating that we must consider a statute as a whole and should not give one provision a meaning inconsistent with the other provisions, although it might be susceptible to such a construction standing alone).

We conclude that consistent with the Act as a whole, a family's income eligibility to receive a benefit from the homestead zone tax increment fund under section 373A.157 may be determined in accordance with the HUD's eligibility rules codified at part 5 of title 24 of the Code of Federal Regulations.

In your fourth question you also ask whether a family's income-eligibility determination is only required for the year in which the family receives the benefit or whether annual recertifications of income are required over the 30-year affordability period under Section 373A.157(g). Request Letter, *supra* note 1, at 2 (Section 373A.157(g) of the Local Government Code provides that "[a]ll housing created or rehabilitated with revenue from the tax increment fund must have at least a 30-year affordability period.").

Again, while section 373A.157 is silent on this issue, a related provision of the Act specifies that a family's income eligibility be determined when the benefit is granted. Section 373A.157(b), which requires that all tax increment fund revenues be spent to benefit families with a yearly income

---

[9]*See also* TEX. LOC. GOV'T CODE ANN. § 373A.157(c) (Vernon 2005) (stating that at least fifty percent of the revenues benefit families that have a yearly income at or below fifty percent of the area median family income), (d) (stating that at least twenty-five percent of the revenues benefit families that have a yearly income at or below thirty percent of the area median family income); *id.* § 373A.106 (stating that homestead land trusts must sell housing units only to families with a yearly income at or below seventy percent of the area median family income).

[10]The HUD standards are also used in other similar statutes providing for affordable housing. *See, e.g., id.* §§ 379C.003(3) (Urban Land Bank Demonstration Program Act) (defining "low income household" with reference to area median income determined by HUD), 379C.010(b) (requiring that a percentage of land bank properties be sold to families with a gross household income not exceeding sixty percent of the area median family income as determined by HUD).

at or below seventy percent of the area median family income, does not specify whether the income eligibility requirement applies only in the year the benefit is received or on an ongoing basis. *See* TEX. LOC. GOV'T CODE ANN. § 373A.157(b) (Vernon 2005). Section 373A.106, however, provides that a land trust must sell or lease all housing units in a homestead preservation district "to families with a yearly income *at the time of purchase or lease* of the housing unit at or below 70 percent of the area median family income." *Id.* § 373A.106(a) (emphasis added); *see also id.* § 373A.106(b)–(c). The reinvestment zone—to which section 373A.157(b) relates—is contained entirely within the district referenced in section 373A.106. *See id.* §§ 373A.152(b), .157(b). The housing units sold or leased by the land trust under section 373A.106 will most likely be the same units constructed or rehabilitated with tax increment funds under section 373A.157. It would be unreasonable to have different and inconsistent eligibility criteria under sections 373A.157 and 373A.106 for the occupation of the same properties. *See* TEX. GOV'T CODE ANN. § 311.021(3) (Vernon 2005) (stating that we may presume that in enacting a statute, the legislature intended a just and reasonable result). Thus, consistent with the Act as a whole, we conclude that the median family income eligibility test under section 373A.157(b) of the Act applies at the time the family receives the housing benefit of the tax increment fund. *See Lubin*, 157 S.W.3d at 120 (stating that one statutory provision should not be given a meaning inconsistent with the other provisions although it might be susceptible to such a construction standing alone).

## S U M M A R Y

Local Government Code chapter 373A enacted in 2005 provides for the creation of homestead preservation districts and homestead reinvestment zones. Section 373A.108's tax exemption applies to land trust real property owned by a community housing organization or a housing finance corporation operating as a land trust in a homestead preservation district only if the real property is inside the district. The exemptions provided by Tax Code sections 11.182 and 11.1825 and by Local Government Code section 394.905 do not apply to such property inside the district.

A city creating a homestead reinvestment zone is not authorized to establish a termination date for the zone. Additionally, a city and a participating county are not authorized to execute an agreement that requires the county to deposit its tax increments into the zone's tax increment fund for a period exceeding one year and under which the county does not have the right to annually reconsider its participation in the zone. Finally, the tax increment fund revenues may be used only to purchase real property, construct or rehabilitate housing units in the zone, and pay zone and housing-related administrative expenses.

A family's income eligibility to receive a benefit from a homestead preservation reinvestment zone tax increment fund under Local Government Code section 373A.157(b) may be determined in accordance with the United States Department of Housing and Urban Development's family income eligibility rules codified at part 5 of title 24 of the Code of Federal Regulations. Additionally, the section 373A.157(b) median family income eligibility determination is required only for the year in which the family is granted a housing benefit from the tax increment fund.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee