**FARMERS GROUP, INC.,
et al., Petitioners**

v.

**Jan LUBIN, Gilberto Villaneuva, and
Michael Paladino, Respondents.**

No. 05–0169.

Supreme Court of Texas.

Argued Jan. 25, 2007.

Delivered April 27, 2007.

Katherine D. Mackillop, Richard N. Carrell, Layne E. Kruse, Gerard G. Pecht, Marcy Hogan Greer, Mary S. Dietz and M. Scott Incerto, Fulbright & Jaworski L.L.P., Austin, for Farmer Group Inc.

Marcy Hogan Greer, Fulbright & Jaworski, L.L.P., Austin, for Farmers Underwriters Association, Fire Underwriters Association, Farmers Insurance Exchange, Texas Farmers Insurance Company, Mid-Century Insurance Company of Texas, Mid-Century Insurance Company, Truck Insurance Exchange, Truck Underwriters Association, and Farmers Texas County Mutual Insurance Company.

Russell S. Post, Joe K. Longley, Law Offices of Joe K. Longley, Philip K. Maxwell, Law Offices of Philip K. Maxwell, Stephen L. McCleery, Austin, Michael T. Gallagher, The Gallagher Law Firm, Daniel M. Downey, Gallagher Lewis Downey & Kim, Houston, for Jan Lubin.

David C. Mattax, Chief Financial Litigation, John M. Hohengarten, James R. Wenzel, William T. hall & Associates, Jeff M. Graham, Lisa Royce Eskow, Weil, Gothshal & Manges LLP, Amy Warr, Alexander Dubose Jones & Townsend, LLP, Greg Abbott, Atty. Gen., Barry Ross McBee, Edward D. Burbach, Rafael Edward Cruz, Paul D. Carmona, Austin, for State.

Joseph C. Blanks, Doucette, for Gerald Hooks and Lesly K. Hooks.

David H. Burrow, Burrow & Parrott, L.L.P., Houston, for Michael Paladino.

David H. Burrow, Burrow & Parrott, L.L.P., Russell S. Post, David Watkin Jones, Beck Redden & Secrest, L.L.P., Dwight E. Jefferson, Houston, for Gilberto Villanueva.

Justice BRISTER delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice O'NEILL, Justice WAINWRIGHT, Justice MEDINA, Justice GREEN, and Justice JOHNSON joined.

In 1973, the Legislature amended the Insurance Code to allow an attorney gen-

eral to bring a class action on behalf of insurance buyers. This is the first time an attorney general has tried. The trial court certified a class, but the court of appeals reversed, finding the Attorney General had not strictly complied with two of the certification requirements.

■■■ We agree courts must rigorously analyze whether a party has strictly complied with all requirements for class certification.[1] But those requirements cannot be applied in a way that renders attorney general class actions impossible, a result that would frustrate the Legislature's intent. Accordingly, we hold the standard class action requirements must be applied generally to the claims asserted by the Attorney General, not the Attorney General himself.

## I. Background

As a result of an investigation by the Texas Department of Insurance, the Texas Attorney General sued various Farmers entities alleging inadequate disclosure and discrimination in its homeowners rating practices.[2] The Commissioner of Insurance also issued a cease-and-desist order against Farmers, and initiated proceedings to collect administrative penalties. Farmers responded by announcing its withdrawal from the Texas homeowners insurance market.

In these dire straits, the parties turned from litigation to negotiation. Within a few weeks, they reached a global agreement in which Farmers signed a class action settlement requiring it to reduce its base premiums, adopt uniform discounts, offer refunds to nonrenewing policyholders, discontinue certain tying practices, and pay the State $2 million in attorney's fees and costs. The agreement was terminable by either party if more than 2 percent of the class members opted out. The settlement was valued at $117 million, the largest property and casualty insurance settlement in the State's history.

The parties applied to the district court for class certification and settlement approval. Five policyholders intervened objecting to both.[3] The district court granted certification and preliminarily approved the settlement.

The Intervenors filed an interlocutory appeal,[4] and the Third Court of Appeals reversed, holding the Attorney General could not bring a class action under the Insurance Code without naming individual class members as representatives.[5] The State and Farmers filed petitions for review.

## II. Appellate Jurisdiction of Class Certification

■■ In 2003, the Legislature expanded this Court's jurisdiction to include interloc-

---

**1.** *See Sw. Refining Co., Inc. v. Bernal*, 22 S.W.3d 425, 435 (Tex.2000) ("Courts must perform a 'rigorous analysis' before ruling on class certification to determine whether all prerequisites to certification have been met."); *see also Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 671 (Tex.2004) ("All prerequisites means all prerequisites.").

**2.** The entities at issue (collectively referred to as "Farmers") are Farmers Group, Inc., Farmers Underwriters Association, Fire Underwriters Association, Farmers Insurance Exchange, Fire Insurance Exchange, Texas Farmers Insurance Company, Mid–Century

Insurance Company Of Texas, Mid–Century Insurance Company, Truck Insurance Exchange, Truck Underwriters Association, and Farmers Texas County Mutual Insurance Company.

**3.** The policyholders (collectively referred to as "Intervenors") are Jan Lubin, Michael Paladino, Gilberto Villanueva, and Gerald and Lesly K. Hooks.

**4.** *See* TEX. INS.CODE art. 21.21, § 18(d) (current version at § 541.259).

**5.** 157 S.W.3d 113 (Tex.App.-Austin 2005).

utory review of class certification orders to the same extent as in the courts of appeals.[6] Thus, the Government Code now grants the following jurisdiction to all Texas appellate courts:

> A person may appeal from an interlocutory order of a district court, county court at law, or county court that ... certifies or refuses to certify a class in a suit brought under Rule 42 of the Texas Rules of Civil Procedure ...[7]

Here, certification was sought and granted under two alternatives: (1) Rule 42 and (2) the separate but virtually identical class-action provisions in the Insurance Code. The Intervenors point out that section 51.014(3) mentions only the former, and argue that we have no jurisdiction because the class can meet the requirements, if at all, of only the latter.

■ We disagree. Assuming the Legislature intended to allow interlocutory review of Rule 42 classes but not Insurance Code classes (an issue we do not reach), in this case the State and Farmers sought both. "As we have repeatedly recognized, if our jurisdiction is properly invoked on one issue, we acquire jurisdiction of the entire case."[8] As we have jurisdiction to review certification under Rule 42, we may review certification under the Insurance Code as well.

Moreover, the trial judge granted certification under both alternatives here. We have held that an alternative holding may establish jurisdiction if, even though a judgment could have been based on either of two grounds, it was based on both.[9] This rule is a practical one, because (1) appellate jurisdiction generally attaches to orders, not reasons, and (2) reviewing one ground for an order would be futile if the order would stand on the unappealed ground regardless. Here, for example, if we have no jurisdiction to review certification based on the Insurance Code, neither did the court of appeals, and thus the class would remain certified under the Insurance Code regardless of either court's Rule 42 analysis. We cannot construe section 51.014 so strictly as to render it futile.[10] As the parties sought and the trial court granted certification under both Rule 42 and the Insurance Code, we have jurisdiction to review both grounds for that order.

### III. Class Actions by the Attorney General

We begin by placing Insurance Code class actions in context. The Code prohib-

---

6. *See* Act of June 11, 2003, 78th Leg., R.S., ch. 204, § 1.02, 2003 Tex. Gen. Laws 848 (codified as Tex. Gov't Code § 22.225(d)) ("A petition for review is allowed to the supreme court for an appeal from an interlocutory order described by Section 51.014(a)(3), (6), or (11), Civil Practice and Remedies Code"). The change applies to petitions for review filed after September 1, 2003. *See id.* § 1.05(a), 2003 Tex. Gen. Laws 850. The petitions here were filed in March 2005.

7. *See* Tex. Civ. Prac. & Rem.Code § 51.014.

8. *Brown v. Todd,* 53 S.W.3d 297, 301 (Tex. 2001).

9. *See State Farm Mut. Auto. Ins. Co. v. Lopez,* 156 S.W.3d 550, 555 (Tex.2004) (finding conflicts jurisdiction based on one of two grounds for trial court's order, while decision could have been based on either, it was based on both); *Texas Natural Res. Conservation Comm'n v. White,* 46 S.W.3d 864, 868 (Tex. 2001) (finding conflicts jurisdiction based on one of two grounds for appellate court's judgment as decision was based on both).

10. *See* Tex. Gov't Code § 311.021 ("In enacting a statute, it is presumed that: ... (2) the entire statute is intended to be effective; (3) a just and reasonable result is intended ..."); *City of Houston v. Jackson,* 192 S.W.3d 764, 770 (Tex.2006) ("Our primary objective when construing a statute is to ascertain and give effect to the Legislature's intent.").

its a list of unfair insurance practices,[11] and delegates enforcement in three ways:

- the Department of Insurance may conduct investigations,[12] issue cease-and-desist orders,[13] assess monetary penalties,[14] and order premium refunds; [15]

- the Attorney General may file suits seeking injunctions,[16] monetary penalties,[17] and restitution; [18] and

- any person may file suit for damages.[19]

Due to the wide-spread use of standard provisions in insurance policies, a single insurance practice may often affect many consumers. Thus, the Code provides for three different types of class actions:

- an administrative class action brought by the Department of Insurance for premium refunds; [20]

- a judicial class action brought by the Attorney General; [21] and

- a judicial class action brought by "a member of the insurance buying public" who has been damaged by an unlawful practice.[22]

Relief under the first is limited to premium refunds,[23] while judicial class actions may recover damages and attorney's fees.[24] But administrative class actions take precedence; no judicial class action can be brought once an administrative class action has started.[25]

Unlike any other statute, the Insurance Code contains its own set of class action rules. While almost identical to those currently in Rule 42 (both of which track federal Rule 23), the Insurance Code provisions were adopted first.[26] Both include the same four prerequisites for all class actions (numerosity, commonality, typicality, and adequacy of representation) [27] and

---

11. Tex. Ins.Code §§ 541.003, 541.051–.061 (formerly art. 21.21, §§ 1(a), 3, 4). After the certification hearing, the Legislature adopted nonsubstantive revisions renumbering and reorganizing the Insurance Code. *See* Act of June 21, 2003, 78th Leg., R.S., ch. 1274, § 1, 2003 Tex. Gen. Laws 3611. As no material changes were made in the provisions relevant to this suit, citation will be to the current Code with the former provision noted parenthetically.

12. *Id.* § 541.101 (formerly art. 21.21, § 5).

13. *Id.* § 541.108 (formerly art. 21.21, § 7).

14. *Id.* § 541.110 (formerly art. 21.21, § 7).

15. *Id.* § 541.301 (formerly art. 21.21, § 14).

16. *Id.* § 541.201 (formerly art. 21.21, § 15(a)).

17. *Id.* §§ 541.204, 541.206 (formerly art. 21.21, § 15(c)).

18. *Id.* § 541.205 (formerly art. 21.21, § 15(d)).

19. *Id.* § 541.151–.162 (formerly art. 21.21, § 16); see also *id.* § 541.002(2) (formerly art. 21.21, § 2(a)) (" 'Person' means an individual, corporation, association, partnership, recipro-

cal or interinsurance exchange, Lloyd's plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, adjuster, or life and health insurance counselor.").

20. *Id.* § 541.301 (formerly art. 21.21, § 14).

21. *Id.* § 541.251(a) (formerly art. 21.21, § 17(a)).

22. *Id.*

23. *Id.* § 541.301(c) (formerly art. 21.21, § 14(a)).

24. *Id.* §§ 541.251(a), 541.252 (formerly art. 21.21, §§ 17(a), 17(b)).

25. *Id.* § 541.251(b) (formerly art. 21.21, § 17(e)).

26. *Compare* Act of May 21, 1973, 63rd Leg., R.S., ch. 143, §§ 13–24, 1973 Tex. Gen. Laws 335–43; *with* Order of May 9, 1977, reprinted in 553–54 S.W.2d [Tex. Cases] at xxxvi-xxxvii.

27. Tex. Ins.Code § 541.256 (formerly art. 21.21, § 18(a)); Tex.R. Civ. P. 42(a).

the same four types of class actions maintainable (those involving a risk of inconsistent adjudications, those that might impair nonparties' interests, those seeking injunctive or declaratory relief, and those in which common questions predominate).[28]

The Code unquestionably authorizes an attorney general to file a class action;[29] the question here is what showing an attorney general must make. The State asserts an attorney general may file a class action as *parens patriae* without meeting the normal certification requirements; the Intervenors assert an attorney general must meet them all, even though this will require recruiting policyholders (such as themselves) as class representatives. We address each argument in turn.

### A. Parens Patriae

■ The State argues that the doctrine of *parens patriae* (literally "parent of the country")[30] allows an attorney general to represent a class without designating representative parties whose claims are typical and who will adequately protect the interests of the class. We decline to engraft the *parens patriae* doctrine on the Code for several reasons.

First, the words "parens patriae" appear nowhere in the Code's class action provisions or their legislative history. The entire Code uses the term only once, when it

bars the office of public insurance counsel from intervening in "parens patriae proceedings brought by the attorney general."[31] Because the Code authorizes an attorney general to bring so many different proceedings, it is unclear which this provision references.

■ Second, a *parens patriae* action is not a type of class action but an alternative to it. In 1972, the United States Supreme Court rejected antitrust standing for states under this doctrine, stating that "[p]arens patriae actions may, in theory, be related to class actions, but the latter are definitely preferable in the antitrust area."[32] Congress responded by passing the Hart–Scott–Rodino Act,[33] which "permits State attorneys general the right to institute *parens patriae* suits on behalf of State residents" but "exempts such suits from the class action requirements."[34] While *parens patriae* and class actions have much in common, they obviously are not the same.

Third, this Court has generally invoked *parens patriae* only with respect to persons unable to protect themselves, such as children,[35] or the mentally ill.[36] That of course is not the case here. While individual insureds may not have the resources of an attorney general, they are certainly capable of bringing class actions them-

---

28. *Id.* § 541.257 (formerly art. 21.21, § 18(b)); Tex. R. Civ. P. 42(b).

29. Tex. Ins.Code § 541.251(a) (formerly art. 21.21, § 17(a)) ("the department may request the attorney general to bring a class action").

30. *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* 458 U.S. 592, 600 n. 8, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982).

31. Tex. Ins.Code § 501.153(3) (formerly art. 1.35A, § 5(b)(6)).

32. *Hawaii v. Standard Oil Co. of California,* 405 U.S. 251, 266, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972).

33. *See* 15 U.S.C. § 15c.

34. *Illinois v. Abbott & Assocs., Inc.,* 460 U.S. 557, 573 n. 29, 103 S.Ct. 1356, 75 L.Ed.2d 281 (1983).

35. *See, e.g., Matter of S.J. C.,* 533 S.W.2d 746, 750 (Tex.1976).

36. *See, e.g., State v. Turner,* 556 S.W.2d 563, 566 (Tex.1977).

selves—as the Intervenors here vigorously demonstrate.

Finally, the doctrine has been invoked in other states to authorize government suits against makers and sellers of tobacco, lead paint, and guns.[37] The Legislature has shown a high interest in policing such suits by government entities.[38] We cannot authorize a broader role for the attorneys general than the Legislature has.[39]

In sum, while "parens patriae" might be useful shorthand for referring to class actions brought by an attorney general, the term is so vague and carries so much baggage that it obscures rather than clarifies our analysis. Accordingly, we decline to import it into the Insurance Code.

## B. The Insurance Code

While we disagree that the doctrine of *parens patriae* exempts an attorney general from meeting class action requirements, we agree those requirements must be applied in a way that does not render attorney general class actions impossible.

■ The Insurance Code provides that if "a member of the insurance buying public has been damaged" by unlawful practices, the Department of Insurance "may request the attorney general to bring a class action."[40] The Intervenors argue that an attorney general can act only as class counsel in such cases, and must recruit one or more policyholders as class representatives. We disagree, for several reasons.

First, nothing in the Code says an attorney general acts only as class counsel. The Code authorizes an attorney general "to bring a class action";[41] under most Texas statutes, it is a *party* who brings a case, not its attorney.[42] The language of the Code appears to authorize attorneys general to file suit in their own right, rather than merely acting as counsel for private citizens who want to do so.

Second, the Code authorizes such suits upon request of the Department, not individual consumers. Requiring an attorney general to get the consent of individual policyholders to act as class representa-

---

**37.** *See, e.g., Spitzer v. Sturm, Ruger & Co.,* 309 A.D.2d 91, 761 N.Y.S.2d 192 (2003) (parens patriae action by New York attorney general against handgun manufacturers); *City of Philadelphia v. Beretta U.S.A., Corp.,* 126 F.Supp.2d 882 (E.D.Pa.2000) (parens patriae action by city against gun manufacturers); *In re Lead Paint Litigation,* 2005 WL 1994172 (2005), *cert. granted,* 185 N.J. 391, 886 A.2d 662 (N.J. Sup.Ct. Nov 17, 2005) (parens patriae suit by 26 governmental entities against lead-paint manufacturers); *see also Broselow v. Fisher,* 319 F.3d 605, 608 (3rd Cir.2003) (discussing settlement of parens patriae suit by state against tobacco companies).

**38.** *See, e.g.,* Tex. Civ. Prac. & Rem.Code § 82.004(a)(2) (limiting product liability actions against manufacturers of common consumer products intended for personal consumption); *id.* § 128.001 (preventing cities but not the state from suing firearms manufacturers); Tex. Gov't Code § 2254.103 (limit-

ing governmental entities ability to sign contingent fee contracts).

**39.** *See Perry v. Del Rio,* 67 S.W.3d 85, 92 (Tex.2001) ("[T]he Attorney General can only act within the limits of the Texas Constitution and statutes, and courts cannot enlarge the Attorney General's powers.").

**40.** Tex. Ins.Code § 541.251(a) (formerly art. 21.21, § 17(a)).

**41.** *Id.*

**42.** *See, e.g.,* Tex. Bus. & Com Code §§ 36.25, 38.302; Tex. Bus. Orgs.Code § 21.802(d); Tex. Civ. Prac. & Rem.Code § 15.020(c)(1); Tex. Educ.Code § 44.032(f); Tex. Health & Safety Code §§ 161.404(d), 161.405, 361.341, 464.015(d); Tex. Ins.Code § 751.004(c); Tex. Lab.Code § 410.252(b); Tex.R. Civ. P. 38, 93(15), 117a(5); *but cf. id.* 13 ("Attorneys or parties who shall bring a fictitious suit as an experiment . . .").

tives would fundamentally change who the statute authorizes to request filing.

Third, requiring an attorney general to recruit individual representatives would be impractical. An attorney general's duty is to represent the state,[43] but attorneys for private individuals have a duty of loyalty only to their clients.[44] Imposing such recruitment would inevitably restrict the "broad discretionary power" attorneys general need to carry out their constitutional duties.[45]

█ But we disagree with the State's argument that an attorney general need not meet the general class action requirements at all. The State argues that the four prerequisites for class actions (numerosity, commonality, typicality, and adequacy) do not apply because the Insurance Code requires them only when "one or more members of a class ... sue ... as representative parties."[46] We do not think this introductory phrase carries that heavy freight, again for three reasons.

First, this language was taken verbatim from Rule 23(a) of the Federal Rules of Civil Procedure. As Rule 23 applies to *all* parties, it would be surprising if legislators incorporated it word-for-word with the intention that it *not* apply to some. As the Insurance Code specifically mandates that "the courts of this state shall be guided by the decisions of the federal courts interpreting Rule 23,"[47] it seems far more like-ly that legislators intended the rule to have the same application it has always had in the federal courts.

Second, the statute provides that a class action may be maintained "if the prerequisites [the four noted above] are satisfied," and the action is one of the four types maintainable.[48] It is hard to see why the Legislature would require the prerequisites to be "satisfied" if it really intended them to be inapplicable.

█ Third, while the Code authorizes an attorney general and the Department of Insurance to pursue many different types of proceedings, the one authorized here is a "class action." The four prerequisites are not simply procedural hurdles; they define what a class action is. Indeed, the Code does not define "class action" anywhere else. And without these prerequisites—numerous, common, typical claims—a suit is simply not a "class action." If none of the prerequisites apply, an attorney general could file class actions involving a single policyholder, or thousands of unrelated claims.

The concurring and dissenting opinion would hold otherwise, exempting the attorney general class actions from all four prerequisites. But even the State concedes "the very notion of a class action brought by the Attorney General under [the Insurance Code] would by definition

---

43. TEX. CONST. art. IV, § 22.

44. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02.

45. *Terrazas v. Ramirez,* 829 S.W.2d 712, 721 (Tex.1991).

46. Tex. Ins.Code § 541.256 (formerly art. 21.21, § 18(a)) provides:

 The court shall permit one or more members of a class to sue or be sued as representative parties on behalf of the class only if:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

47. *Id.* § 541.257 (formerly art. § 21.21, § 18(c)).

48. *Id.*

involve typical claims." Nor does the State suggest an attorney general can file a class action on behalf of only one or a handful of affected consumers. If none of the Code's four prerequisites apply, we cannot bring numerosity and typicality back into the equation because we feel "[p]erhaps this works." [49] The Legislature could have structured this remedy in various ways, but when it authorized attorneys general to bring a "class action," we presume it meant what the Code says.

This does not mean these prerequisites must apply in precisely the same way as in other class actions. In an official capacity, an attorney general is never a policyholder, and thus cannot be a class representative in the traditional sense. The Code requires typicality and adequacy of "the representative parties," [50] which the court of appeals strictly construed along traditional lines. But the Code also authorizes an attorney general to file suit alone, and we cannot construe the Code in a way that renders that provision ineffective. [51] Construing both together, we hold that the typicality, adequacy, and other prerequisites for all class actions must be applied to the damage claims asserted by an attorney general, rather than to that official personally. [52]

The court of appeals held that recruited class representatives were necessary to measure the fairness of the settlement and to avoid possible conflicts in an attorney general's dual roles. [53] While the opinions of class members are certainly relevant in analyzing the settlement, their comments are generally solicited by notice and an opportunity to be heard, not by turning over management of the class action to them. And while it is certainly possible for an attorney general to have conflicts so serious the adequacy requirement is not met, [54] the Attorney General's public duties to all Texans cannot alone create such a conflict without again rendering all such class actions impossible. [55] Moreover, the precedence the Code grants to administrative class actions (which are limited to premium refunds) [56] suggests that attorneys general are not inadequate representatives merely because a private litigant might demand more than that.

 Finally, the Intervenors argue that granting standing to the Attorney General to bring class actions without a class representative would be unconstitutional. Clearly, a legislature may grant

---

**49.** 222 S.W.3d at 421.

**50.** Tex. Ins.Code § 541.256(3), (4) (formerly art. 21.21, § 18(a)(3), (4)).

**51.** Tex. Gov't Code § 311.021(2).

**52.** *Id.*

**53.** 157 S.W.3d 113, 129 (Tex.App.-Austin 2005).

**54.** *See Pub. Util. Comm'n of Texas v. Cofer,* 754 S.W.2d 121, 125 (Tex.1988) ("While the Attorney General has the right and duty to *represent* the state agencies, he has no constitutional or statutory authority to exercise powers that belong to the Legislature or that have been delegated by the Legislature to administrative agencies. Any attempt to exercise such powers or defeat the exercise of those powers by the appropriate bodies by collusive 'representation' would not only violate the principle of separation of powers, but call into question the integrity of a court that authorized or permitted such action.").

**55.** The Intervenors' claim that the Attorney General proposes to release claims they want to assert goes not to the adequacy of Attorney General but the adequacy of settlement, an issue not before us. *See McAllen Med. Ctr., Inc. v. Cortez,* 66 S.W.3d 227, 234 (Tex.2001) (holding interlocutory review premature of preliminary settlement approval).

**56.** *See* Tex. Ins Code §§ 541.251(b), 541.303(a) (formerly art. 21.21, §§ 14(b), 17(e)).

standing to a state attorney general to bring suit for injury done to its citizens, as Congress has done in the Hart–Scott–Rodino Act, and as the Texas Legislature has done in many contexts. While due process may require individual notice and opt-out rights,[57] or other procedures that protect the interests of absent parties,[58] the Intervenors do not explain why attorney general class actions necessarily fail those requirements. Nor do they explain why absent class members would be better protected by recruited class representatives and private attorneys than an elected attorney general or the State's Department of Insurance. Generally, class actions are proper when "the relationship between the parties present and those who are absent is such as legally to entitle the former to stand in judgment for the latter." [59] As the State's chief legal officer,[60] and the Legislature's designee for bringing class actions under the Insurance Code, an attorney general stands in just such a relationship.

Class actions were designed in part to ensure law enforcement by private attorneys general; [61] it would be absurd to construe them to prevent the same kind of suit by a real attorney general. The Legislature has provided that the class action provisions here are to be liberally construed; [62] requiring an attorney general to act solely as class counsel would not be a liberal construction. As this is the first time an attorney general has ever brought an Insurance Code class action, we need not decide every question about how such actions will operate in the future; we decide only that the Legislature did not intend them to be identical to private class actions, else it would not have provided for both.

## IV. Conclusion

Because the court of appeals held that typicality and adequacy could be determined only with respect to representative parties, it did not address whether the claims asserted by the Attorney General could meet those standards. Moreover, the Intervenors assert additional complaints about notice, the conduct of the approval hearing, and the fairness of the settlement that the court of appeals did not reach because it found certification improper. Accordingly, we reverse the court of appeals' judgment and remand to

**57.** *See Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 667 (Tex.2004).

**58.** *See Hansberry v. Lee*, 311 U.S. 32, 42, 61 S.Ct. 115, 85 L.Ed. 22 (1940) ("[T]his Court is justified in saying that there has been a failure of due process only in those cases where it cannot be said that the procedure adopted, fairly insures the protection of the interests of absent parties who are to be bound by it.").

**59.** *Id.* at 43, 61 S.Ct. 115.

**60.** *See* Tex. Const. art. IV, § 22; *Terrazas v. Ramirez*, 829 S.W.2d 712, 721 (Tex.1991).

**61.** *See Deposit Guar. Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 338, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980) ("For better or worse, the financial incentive that class actions offer to the legal profession is a natural outgrowth of the increasing reliance on the 'private attorney general' for the vindication of legal rights; obviously this development has been facilitated by Rule 23."); *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 403, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) ("In order to achieve the primary benefits of class suits, the Federal Rules of Civil Procedure give the proposed class representative the right to have a class certified if the requirements of the Rules are met. This 'right' is more analogous to the private attorney general concept than to the type of interest traditionally thought to satisfy the 'personal stake' requirement.").

**62.** Tex. Ins.Code § 541.008 (formerly art. 21.21, § 1(b)).

that court to consider the Intervenors' other points of error that it did not reach.

Justice HECHT filed an opinion concurring in part and dissenting in part.

Justice WILLETT did not participate in the decision.

Justice HECHT, concurring in part and dissenting in part.

The Texas Insurance Code provides:

If a member of the insurance buying public has been damaged by an unlawful method, act, or practice defined ... as an unlawful deceptive trade practice, the department [of insurance] may request the attorney general to bring a class action or the individual damaged may bring an action on the individual's own behalf and on behalf of others similarly situated to recover damages and obtain relief as provided by this subchapter.[1]

Thus, two types of class actions are authorized, one brought by a damaged individual on behalf of others similarly situated, the other by the Attorney General. The Code then adds:

The court shall permit one or more members of a class to sue or be sued as representative parties on behalf of the class only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.[2]

These four prerequisites apply when a class member is suing or being sued as a class representative. When the Attorney General sues at the behest of the Department of Insurance, it is not as a class member or representative party but as a state officer. By the plain statutory text, the four prerequisites do not apply to as class action brought by the Attorney General. The Court reaches the opposite conclusion for three reasons. I disagree.

First, the Court argues that because the statutory language is taken verbatim from Rule 23 of the Federal Rules of Civil Procedure, which applies to all class actions in federal courts, the Legislature must have intended that it apply to all class actions in state courts, especially since "the Insurance Code specifically mandates that 'the courts of Texas shall be guided by the decisions of the federal courts interpreting Rule 23' ".[3] The argument suffers not only from a flaw in logic (why must the Legislature's intent track federal lawmakers'?) but also from an incorrect premise. Federal courts have refused to apply Rule 23's requirements to enforcement actions brought by federal agencies simply because the remedies sought may affect classes or groups of individuals.[4] Another analogue in the federal system is a *parens patriae* action, brought by a state or its

1. TEX. INS.CODE § 541.251(a) (formerly art. 21.21, § 17(a)).

2. *Id.* § 541.256 (formerly art. 21.21, § 18(a)).

3. *Ante* at 425 (quoting TEX. INS.CODE § 541.257 (formerly art. 21.21, § 18(c))).

4. *See General Tel. Co. of the Nw. v. EEOC,* 446 U.S. 318, 324, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980) (EEOC suing under Title VII); *In re Bemis Co.,* 279 F.3d 419, 422 (7th Cir.2002) (same); *NLRB v. Plumbers & Pipefitters Local Union No. 403,* 710 F.2d 1418, 1420 (9th Cir.1983) (NLRB suing under NLRA); *Donovan v. University of Tex. at El Paso,* 643 F.2d 1201, 1208 (5th Cir.1981) (Secretary of Labor suing under FLSA).

attorney general on behalf of state residents,[5] to which Rule 23 does not apply.[6] So to the extent that Rule 23's coverage is instructive, it argues against the Court's position, not for it. Of course, when a class action is brought by a private person and thus is one to which the four prerequisites borrowed from Rule 23 would apply, federal case decisions provide guidance.

Second, the Court points to the provision following the four prerequisites quoted above that authorizes a class action "if the[se] prerequisites ... are satisfied" in addition to others.[7] The Court explains simply that "[i]t is hard to see why the Legislature would require the prerequisites to be 'satisfied' if it really intended them to be inapplicable." [8] But it makes perfect sense for the Legislature to have intended that the four prerequisites must be satisfied *when* they apply—when a class action is brought by "one or more members of a class"—not when they don't—when a class action is brought by the

Attorney General. And, of course, that is what the plain text says.

Third, the Court insists that the four prerequisites quoted above must apply to any class action, even one brought by the Attorney General, because "they define what a class action is." [9] In other words, the Legislature had no choice but to impose these prerequisites on a class action by the Attorney General because a class action cannot exist otherwise. But a class action brought by the Attorney General is already an unusual creature, as the Court recognizes, and having provided for it, the Legislature was not obliged to structure the procedure to satisfy the Court's idea of what a class action should be.

Having determined that the prerequisites quoted above apply to a class action brought by the Attorney General, the Court ought to say *how*, since their application to a non-representative litigant like the Attorney General is not immediately apparent. The Court begins by saying

**5.** *E.g.,* 15 U.S.C. § 15c (authorizing a state attorney general to sue on behalf of state residents for Sherman Act violations); *id.* § 6103 (authorizing a state to sue on behalf of its residents regarding telemarketing practices); *id.* § 6309(c) (authorizing a state to sue on behalf of its residents regarding boxing practices); *id.* § 6504 (authorizing a state to sue on behalf of its residents regarding children's online privacy protection); *id.* § 7706(f) (authorizing a state attorney general and other state officials to sue on behalf of state residents regarding pornography); 18 U.S.C. § 248(c)(3) (authorizing a state attorney general to sue on behalf of state residents to protect access to clinics providing reproductive health services and to places of worship); 49 U.S.C. § 14711 (authorizing a state to sue on behalf of its residents to enforce certain consumer protection provisions that apply to individual shippers).

**6.** *See, e.g., Illinois v. Abbott & Assocs., Inc.,* 460 U.S. 557, 573 n. 29, 103 S.Ct. 1356, 75 L.Ed.2d 281 (1983) ("Congress focused on the difficulty of achieving class certification of

[Sherman Act] consumer actions under Rule 23 of the Federal Rules of Civil Procedure and the complexity of measuring and distributing damages in such cases. See generally H.R.Rep. No. 94–499, *supra* n. 23, at 3–8[, U.S.Cong. & Admin.News 1994, p. 2091]; S.Rep. No. 94–803, *supra* n. 18, at 6–7, 39–40. To remedy these problems, the 1976 statute permits state attorneys general the right to institute *parens patriae* suits on behalf of state residents, 15 U.S.C. § 15c; exempts such suits from the class action requirements of Rule 23, § 15c(a); and allows damages in these suits to be computed through aggregation techniques, § 15d.").

**7.** Tex. Ins.Code § 541.257(a) ("An action may be maintained as a class action under this subchapter if the prerequisites of Section 541.256 are satisfied, and in addition [one of three other conditions is met].") (formerly art. 21.21, § 18(b)).

**8.** *Ante* at 425.

**9.** *Ante* at 425.

that these prerequisites need not "apply in precisely the same way as in other class actions",[10] then offers that they "must be applied to the damage claims asserted by an attorney general, rather than to that official personally." [11] Perhaps this works for the prerequisites of numerosity and commonality. The trial court must find that the Attorney General's claims affect numerous persons and share common issues of law or fact. But how can the trial court determine that "the claims or defenses of the representative parties are typical of the claims or defenses of the class" when there are no representative parties? And since the Attorney General does not act as a representative party or counsel for the class or any person, but rather as "the chief legal officer of the State, [with] broad discretionary power in conducting his legal duty and responsibility to represent the State",[12] determining that "the representative parties will fairly and adequately protect the interests of the class" is impossible. The Court states that an Attorney General's "conflicts [may be] so serious the adequacy requirement is not met", although his "public duties to all Texans cannot alone create such a conflict".[13] It is hard even to imagine what the Court has in mind, but the seriousness of the Court's suggestion cannot be ignored.

I would hold that the four prerequisites quoted above do not apply, by the plain text of the statute, to a class action brought by the Attorney General. That is not to say that such a class action is also excused from the other requirements of the statute, or that judicial supervision of the class vehicle, including the settlement reached in this case, should in any way be relaxed. I agree that the case should be returned to the court of appeals for consideration of the numerous other issues respondents have raised.

---

10. *Ante* at 426.

11. *Ante at* 426.

12. *Terrazas v. Ramirez,* 829 S.W.2d 712, 721 (Tex.1992).

