Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio



## OPINION

No. 04-10-00478-CV

Clint **TUMA** and Amy Tuma,
Appellants

v.

**KERR COUNTY, TEXAS**, a Political Subdivision of the State of Texas, and Janie Whitt,
Appellees

From the 198th Judicial District Court, Kerr County, Texas
Trial Court No. 10-579-B
The Honorable M. Rex Emerson, Judge Presiding

Opinion by:      Karen Angelini, Justice

Sitting:           Karen Angelini, Justice
                   Sandee Bryan Marion, Justice
                   Phylis J. Speedlin, Justice

Delivered and Filed:    November 29, 2010

REVERSED; TEMPORARY INJUNCTION DISSOLVED

Clint and Amy Tuma bring this interlocutory appeal from the trial court's order granting a temporary injunction enjoining them from continued ownership, custody, and control within Kerr County of any dangerous wild animal held in violation of state law. The Tumas contend the trial court's amended temporary injunction is void because (1) the injunction does not detail why irreparable injury will occur if the temporary injunction is not granted; and (2) neither Kerr

County nor Janie Whitt has standing to obtain injunctive relief. We agree and hold that the trial court's amended temporary injunction is void.

Texas Rule of Civil Procedure 683 requires that an order granting an injunction "set forth the reasons for its issuance[.]" TEX. R. CIV. P. 683. The Texas Supreme Court has interpreted this rule to require "the order set forth the reasons why the court deems it proper to issue the writ to prevent injury to the applicant in the interim; that is, the reasons why the court believes the applicant's probable right will be endangered if the writ does not issue." *Transp. Co. v. Robertson Transps., Inc.*, 152 Tex. 551, 556, 261 S.W.2d 549, 553 (1953); *see also State v. Cook United, Inc.*, 464 S.W.2d 105, 106 (Tex. 1971) (explaining that under Rule 683 "it is necessary to give the reasons why injury will be suffered if the interlocutory relief is not ordered"). And, when setting forth its reasons, the trial court must set forth specific reasons, and not merely make conclusory statements. *Kotz v. Imperial Capital Bank*, 319 S.W.3d 54, 56 (Tex. App.—San Antonio 2010, no pet.); *see* TEX. R. CIV. P. 683 (requiring the court's order granting injunctive relief to "be specific in terms"); *Indep. Capital Mgmt., L.L.C. v. Collins*, 261 S.W.3d 792, 795-96 (Tex. App.—Dallas 2008, no pet.) (holding that injunction order simply setting out elements necessary for relief, and failing to identify the injury from denial of the injunction, was conclusory and void); *AutoNation, Inc. v. Hatfield*, 186 S.W.3d 576, 581 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("Merely stating that party 'will suffer irreparable harm' or 'has no adequate remedy at law' does not meet Rule 683's requirement for specificity."); *Univ. Interscholastic League v. Torres*, 616 S.W.2d 355, 358 (Tex. Civ. App.—San Antonio 1981, no writ) (same). These procedural requirements of Rule 683 are mandatory, and an order granting a temporary injunction that fails to strictly comply with the rule is subject to being declared void and dissolved. *Qwest Commc'ns Corp. v. AT & T Corp.*, 24 S.W.3d 334, 337 (Tex. 2000) (per

curiam); *InterFirst Bank San Felipe, N.A. v. Paz Constr. Co.*, 715 S.W.2d 640, 641 (Tex. 1986) (per curiam); *Kotz*, 319 S.W.3d at 56. Here, the trial court's amended temporary injunction sets forth no reasons at all why injury will result in the absence of a temporary injunction. Thus, it is void and subject to being dissolved.

Moreover, even if the trial court's amended temporary injunction had complied with Rule 683's specificity requirements, the amended temporary injunction is still void because neither Kerr County nor Janie Whitt had standing to obtain injunctive relief.

Kerr County and Janie Whitt[1] sued the Tumas for violating Chapter 822E of the Texas Health and Safety Code, commonly known as the Dangerous Wild Animals Act, by failing to obtain certificates of registration for their dangerous wild animals. In their petition, Kerr County and Janie Whitt sought a civil penalty of $2000.00 per animal per day of the violation, along with attorney's fees and costs. They also sought injunctive relief under section 822.115 of the Texas Health and Safety Code. After a hearing, the trial court granted temporary injunctive relief.

Standing is a component of subject-matter jurisdiction that can be raised at any time. *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005). And, a party's lack of standing deprives the trial court of subject-matter jurisdiction, rendering any action by the trial court void. *In re Mask*, 198 S.W.3d 231, 234 (Tex. App.—San Antonio 2006, orig. proceeding); *Taub v. Aquila Sw. Pipeline Corp.*, 93 S.W.3d 451, 455-56 (Tex. App.—Houston [14th Dist.] 2002, no pet.). We review whether a party has standing de novo. *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004). And, in so reviewing, we are "not required to

---

[1] Janie Whitt, the Kerr County Animal Control director, brought suit in her individual capacity.

look solely to the pleadings, but may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). In considering such evidence, however, we should confine ourselves "to the evidence relevant to the jurisdictional issue." *Id.*

Further, when construing a statute, we look to the language of the statute as the truest manifestation of legislative intent. *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006). Thus, when the language is unambiguous, we construe the statute as written. *Id.* at 651-52. And, we read words and phrases in context and construe them according to the rules of grammar and common usage. TEX. GOV'T CODE ANN. § 311.011 (West 2005).

Under the Dangerous Wild Animals Act, "[a]ny person who is directly harmed or threatened with harm by a violation of this subchapter or a failure to enforce this subchapter may sue an owner of a dangerous wild animal to enjoin a violation of this subchapter or to enforce this subchapter." TEX. HEALTH & SAFETY CODE ANN. § 822.115 (West 2010). We believe it significant that section 822.115 uses the adverb "directly." And, according to the rules of grammar and common usage, "directly" modifies both "is . . . harmed" and "is . . . threatened with harm." That is, only a person who *is directly harmed* or a person who *is directly threatened with harm* may seek injunctive relief. Thus, the issue is whether Janie Whitt is a person who is directly harmed or is directly threatened with harm by the Tumas' violations of the Dangerous Wild Animals Act.

In her petition, Whitt alleged in a conclusory fashion that she is directly harmed and threatened with harm by the Tumas' continued ownership, custody, and control of any dangerous wild animal because the Tumas' facilities "are insufficient to keep these animals from harming [her] and the citizens of Kerr County, Texas." At the injunction hearing, Whitt testified that she

lives in Kerrville, more than ten miles from where the Tumas cage the animals. Nevertheless, Whitt testified that she felt threatened by the animals because "they are dangerous animals, and if they have not been registered, one could escape and cause injury to someone or even me if I'm in that area visiting friends." However, that Whitt might visit friends near where the Tumas cage their animals and those animals might escape does not amount to her being *directly* harmed or *directly* threatened with harm sufficient to confer standing under section 822.115.

Additionally, Kerr County has no standing to obtain injunctive relief. Under the Dangerous Wild Animals Act, a county clearly has the authority to impose civil penalties upon an owner in violation of the Act. *See* TEX. HEALTH & SAFETY CODE ANN. § 822.114 (West 2010) (providing that a person who fails to obtain a certificate of registration "is liable for a civil penalty of not less than $200 and not more than $2000 for each animal with respect to which there is a violation and for each day the violation continues," and allowing "[t]he county or municipality in which the violation occurs [to] sue to collect a civil penalty").[2] However, the Act clearly states that only a "person" who is directly harmed or threatened with harm by a violation can sue to enjoin a violation. *See id.* § 822.115. The Act specifically defines "person" as "an individual, partnership, corporation, trust, estate, joint stock company, foundation, or association of individuals." *Id.* § 822.101(6). This definition does not include counties. Had the Legislature intended to allow counties to obtain injunctive relief, it would have included counties within the definition of "person" or specifically referred to counties as it did in section 822.114.

As an alternative argument, Kerr County contends that if we hold that it does not have standing to seek injunctive relief under the Dangerous Wild Animals Act, then it has standing

---

[2] We note that an owner in violation of the Act is also subject to criminal penalties. *See* TEX. HEALTH & SAFETY CODE ANN. § 822.113 (West 2010) (providing that an owner who fails to obtain a certificate of registration for a dangerous wild animal commits a Class C misdemeanor for each animal "with respect to which there is a violation, and each day that a violation continues is a separate offense").

under the doctrine of *parens patriae*. Under this doctrine, a state in its sovereign capacity may, in a proper case, maintain a suit on behalf of its citizens for the protection of their rights. *See New Jersey v. New York*, 345 U.S. 369, 372-73 (1953); *Alaska Sport Fishing Ass'n v. Exxon Corp.*, 34 F.3d 769, 773 (9th Cir. 1994); *see also Lakeshore Util. Co. v. Tex. Natural Res. Conservation Comm'n*, 92 S.W.3d 556, 565 (Tex. App.—Austin 2002) (explaining that under the doctrine of *parens patriae*, "the State, as 'parent of the country,' may sue to protect an interest in the health and well-being – both physical and economic – of its residents in general"), *rev'd in part on other grounds*, 164 S.W.3d 368 (Tex. 2005); *Bachynsky v. State*, 747 S.W.2d 868, 869 (Tex. App.—Dallas 1988, writ denied) (same). This doctrine, however, does not apply to counties, whose power is derivative and not sovereign. *See Mass. v. Mellon*, 262 U.S. 447, 485-86 (1923) (explaining that when a state's authority is derivative of the federal government, a state cannot use the doctrine of parens patriae to sue on behalf of its citizens with respect to the federal government, because "[i]n that field, it is the United States, and not the state, which represents them as parens patriae"); *Coldsprings Township v. Kalkaska Cnty. Zoning Bd. of Appeals*, 755 N.W.2d 553, 555 (Mich. App. 2008) (explaining that "political subdivisions such as cities and counties, whose power is derivative and not sovereign, cannot sue as *parens patriae*"); *County of Lexington v. City of Columbia*, 400 S.E.2d 146, 147 (S.C. 1991) ("Generally, a county has the power to sue and be sued as a political body. As a political subdivision of the State, however, it lacks the sovereignty to maintain a suit under the doctrine of *parens patriae*."); *Bd. of Cty. Comm'rs v. Denver Bd. of Water Comm'rs*, 718 P.2d 235, 241 (Colo. 1986) (holding that counties lack the element of sovereignty necessary for *parens patriae* standing because "counties, unlike states, are not independent governmental entities existing by reason of any inherent sovereign authority of their residents").

Moreover, even if the doctrine of *parens patriae* did apply to counties, the doctrine has been used "sparingly" in Texas. *Lakeshore*, 92 S.W.3d at 565. The Texas Supreme Court has stated that it has "generally invoked *parens patriae* only with respect to persons unable to protect themselves, such as children, or the mentally ill." *Farmers Group, Inc. v. Lubin*, 222 S.W.3d 417, 423 (Tex. 2007). Thus, in a case in which the State argued it had standing under *parens patriae* to bring a class action under the Texas Insurance Code, the supreme court rejected the State's argument, explaining that "[w]hile individual insureds may not have the resources of an attorney general, they are certainly capable of bringing class actions themselves as the Intervenors here vigorously demonstrate." *Id.* at 423-24. Similarly, here, the Dangerous Wild Animals Act specifically allows individuals to obtain injunctive relief. *See* TEX. HEALTH & SAFETY CODE ANN. § 822.115 (West 2010). Thus, even if the doctrine did apply to counties, it would not apply to the facts of this case.

## CONCLUSION

Having held that the amended temporary injunction is void, we need not address the other appellate issues raised by the Tumas. Accordingly, the trial court's order granting the amended temporary injunction is reversed, and the amended temporary injunction is dissolved.

Karen Angelini, Justice